No. 22,163.

*In re* Application of the CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY for appointment of Arbitrator under chapter 226 of the Laws of 1917 (THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellee,* v. CHARLES FULLER et al., *Appellants*).

### SYLLABUS BY THE COURT.

1. WORKMEN'S COMPENSATION ACT—*New Election Not to Accept it Necessary after its Revision.* The workmen's compensation act of 1913 provided that all employers within its general scope should be presumed to have come within its provisions, unless by reason of an affirmative election to the contrary, expressed by filing a notice with the secretary of state, which should be changed only by a written declaration filed with that officer. In 1917 the act was radically amended, many important changes being made. The section relating to the election by employers was reënacted, with several merely verbal changes and the addition of a clause declaratory of the law as it already existed. *Held,* that an employer who had given notice in 1913 of an election not to come within the law, was by the new act brought within its operation, in the absence of notice of an election to the contrary given subsequent to its enactment.

2. SAME—*A Minor is Bound by Provisions of Statute.* The fact that an employee is a minor does not prevent his being bound by the statute which places employees within the operation of the workmen's compensation act in the absence of an affirmative election to the contrary.

Appeal from Sherman district court; CHARLES I. SPARKS, judge. Opinion filed December 6, 1919. Affirmed.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* all of Topeka, *George C. Stiles,* and *F. M. Miner,* both of Minneapolis, Minn., for the appellants.

*Luther Burns,* and *John E. DuMars,* both of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: On November 8, 1917, Charles Fuller, twenty years of age, an employee of the Chicago, Rock Island & Pacific Railway Company, received an injury arising out of and in the course of his employment. In February, 1918, the company filed in the district court an application for the appointment

of an arbitrator to determine the amount to which he was entitled under the workmen's compensation act. An arbitrator was appointed, who made an award which was confirmed by the court. At the hearing before the arbitrator, and also upon the application for a confirmation of his report, objections were made on behalf of Fuller and his parents, for the reason that neither he nor the company was subject to the compensation statute, and on that ground they now appeal from the decision.

1. The company contends that in November, 1917, it was operating under the provisions of the compensation act, and the appellants deny this. There is no dispute as to the facts. The controversy is wholly one concerning the construction of the statute of 1917. The original compensation act in this state became operative as to a particular employer only by his making an affirmative election to come within its provisions. (Laws 1911, ch. 218, § 44.) Two years later, this practice was changed, and the rule was adopted that all employers of the classes covered should be presumed to have come within its provisions, except such as should file with the secretary of state notice of an election to the contrary, subject to change only by a subsequent written declaration. (Gen. Stat. 1915, § 5938.) In March, 1913, the Rock Island company filed notice of its election not to accept the provisions of the act of 1911, as amended by the act of 1913. In 1917 a statute was passed amending twenty-five sections of the act of 1913 and adding two new ones. (Laws 1917, ch. 226.) The section relating to election by employers was reënacted with certain changes which will be pointed out later. (Laws 1917, ch. 226, § 23.) The railway company has filed no declaration of a change in that election, but contends that the effect of the act of 1917 was to bring within its operation all employers within its terms who did not, subsequent to its enactment, file notice that they elected not to come under it. The soundness of this contention is the question to be determined.

The applicants invoke the statutory direction that—

"The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment." (Gen. State. 1915, § 10973, subdiv. 1.)

39—105 KAN.

That is the usual rule of construction, and implies that ordinarily language of an earlier statute which is preserved in an amendment is deemed to speak as of the time of the original enactment, and not of the later one. The rule, however, is subject to the express reservation that it is not to be followed when "such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute." (Gen. Stat. 1915, § 10973; *City of Emporia v. Norton,* 16 Kan. 236.) It is moreover merely declaratory of what is by the weight of authority regarded as the reasonable method of interpretation (26 A. & E. Encycl. of L. 713; II Lewis' Sutherland Statutory Construction, 2d ed., §§ 366, 367; Cooley's Constitutional Limitations, 7th ed., 96, 97), although an early Kansas case (*Gordon v. The State, ex rel.,* 4 Kan. 489, 500) has been regarded as adopting the contrary view. (*City of Troy v. A. & N. Railroad Co.,* 11 Kan. 519, 531.) The purpose of the general rule is to avoid the practical inconveniences which would result from the conception that the old statute had ceased to have any force and that the new one had no effect save from the date of its enactment (II Lewis' Sutherland Statutory Construction, 2d ed., § 366), for instance, the loss of offices, the end of corporate existence, the defeat of inchoate statutory rights, the taking away of statutory power, or the affecting of pending proceedings and criminal charges. (Id., § 367.)

The rule of construction referred to, as it is recognized 'in the absence of legislation, or as it is formulated in the statute, is not meant to interfere with the enforcement of what to the court appears to be the real intention of the lawmaking body, as derived from a consideration of the acts involved, and the circumstances under which they were adopted. In seeking for the real intention of the present law, we are constrained to the belief that the legislative purpose was that all employers within the general scope of the compensation act should be held to come within its provisions, except such as subsequent to the 1917 enactment should file with the secretary of state notice of an election to the contrary. While the act of 1917 left untouched some seventeen of the sections of the law as it had stood since 1913, the changes made in the other sections were radical and far-reaching. Important alterations were made re-

lating to the circumstances under which compensation was to be awarded, the amount, and the methods by which it was to be determined. Merely by way of illustration—until 1917 an employer who had rejected the compensation system could still show contributory negligence in reduction of damages in an action against him based on his common-law liability (Gen. Stat. 1915, § 5940)—a right taken away in that year. (Laws 1917, ch. 226, § 25.) The statute with these amendments was so different from that previously in force that the fact that an employer had rejected the provisions of the original act afforded no just basis for a presumption that he would not be willing to accept those embodied in the statute in its final form. The clearly displayed policy of the legislature since 1913 has been to encourage the extension of the operation of the compensation act by making it apply to all establishments within its general scope, excepting such as are taken out of it by their own affirmative action. To have arranged that employers who had elected not to come within the provisions of the law as it stood in 1913 should be unaffected by the new legislation unless they should themselves take the initiative to that end, would have been to refuse to apply the same principle to the new situation, and would indicate a partial return to the policy of the act of 1911, under which no employer was affected unless he filed a notice of his election to be brought within its operation.

The reënactment of the section of the act of 1913 creating a presumption that an employer was within the compensation law unless he indicated to the contrary, may be assumed to have had some effect—to have created a different condition of the law from what would have existed if all reference to it had been omitted from the act of 1917. Its reënactment appears to have been for the very purpose of requiring those employers who were not content to abide by the new system to give public expression of their unwillingness to be bound by it, or by their silence to submit themselves to it. The inclusion in the new act of the section in question either had that effect, or it had none whatever. The changes made in its language created no difference in its operation. The relation of the amended section to the original can be seen by the following reprint, in which words included in the original act and omitted in the

amendment are inclosed in brackets, and words not in the original but added in the amendment are italicised:

"[All employers as defined by and] *Every employer* entitled to come within the provisions of this act, *as defined and provided by this act,* shall be presumed to have done so, *except such employer privileged to elect to come within the provisions of this act, as provided in section 1 hereof and section 5902 of the General Statutes of 1915,* unless such employer shall file with the secretary of state at Topeka, Kansas, a written statement that he elects not to accept thereunder, and thereafter any such employer desiring to change his election shall only do so by filing a written declaration thereof with the secretary of state. Notice of such election shall be forthwith posted by such employer in conspicuous places in and about his place of business."

Manifestly there is no substantial difference between the clauses "All employers as defined by and entitled to come within the provisions of this act" and "Every employer entitled to come within the provisions of this act, as defined and provided by this act." The only other change consists in the addition of the words "except such employer privileged to elect to come within the provisions of this act, as provided in section 1 hereof and section 5902 of the General Statutes of 1915." The references are to a provision in section 1 of the new act that employers whose work, trade or business is not included within the employments enumerated and characterized as "especially dangerous" (to which alone the compensation statute is by its terms made applicable) may nevertheless elect to come within its provisions by filing a statement to that effect; and to a similar provision in section 5902 of the General Statutes of 1915 with regard to employers who are likewise not within the general scope of the statute because employing less than five workmen. The statute does in fact apply, to a certain extent, regardless of their wishes, to all employers of five or more workmen in the lines characterized by it as especially dangerous. If they do not accept its compensation feature, their rights in damage suits on account of personal injuries are restricted by it. It does not apply at all to other employers unless they so elect. As a convenient form of expression, it is said not to apply to those who elect not to come within it, the meaning being that such persons are not subject to the compensation system, as distinguished from that of the common law, in relation to the remedy of workmen

for injuries received growing out of their employment. The very portions of the statute by virtue of which alone it can under any circumstances apply to the exceptional cases referred to, show clearly that such application can be brought about only by the voluntary act of the employer, who is otherwise explicitly excluded from its operation. The section above quoted, as it read in 1913 (Gen. Stat. 1915, § 5938), manifestly related only to elections by employers to whom the statute was made generally applicable, although it contained no explicit exception with regard to employers upon whom it had no effect whatever in the absence of such an election. It was open to no reasonable doubt as to its meaning in that regard, for clearly it could not, by the most liberal construction, have been interpreted as making the statute applicable without their consent to employers whose business was not especially dangerous, or who employed less than five workmen.

In the brief of the plaintiff in *Wegele v. Milling Co.*, post, p. 615, which was argued and submitted with the present case, because involving the same question, the plaintiff's contention there being that of the appellants here, it is suggested that the effect of the added clause under consideration is to prevent employers whose business is not classed as especially dangerous, or who employ less than five workmen, from withdrawing from the operation of the compensation act after having elected to come under it. This is an interpretation to which we think the language of the statute would not in any event be open; but it plainly is untenable, because, although in the case of employers of less than five workmen the right to a change of election is given only by implication and in the earlier act (Gen. Stat. 1915, § 5902), in the case of employers whose business is not classed as especially dangerous it is given expressly, in the very act the effect of which is under consideration. (Laws 1917, ch. 226, § 1.)

The exception regarding employers who were wholly unaffected by the law unless they voluntarily chose to take advantage of it, which was inserted in the reënacted section, was in our judgment purely declaratory, and did not in the least change its effect. If to accomplish some other purpose the section was to be reënacted, it might have been thought worth while to repeat there what had already been explicitly stated

in other sections, that the inaction of employers in the exceptional classes did not bring them within the operation of the statute, a repetition perhaps designed to make it perfectly clear that the reënactment of the section did not change its effect in that regard, but it does not seem to this court reasonable to suppose that the legislature can have amended the original section solely for the purpose of inserting a redundant clause, which could have no practical effect upon the force of the statute, and could hardly have been intended to clear up a possible ambiguity, because none existed with respect to the subject to which it related. In view of this situation, we conclude that the present statute should be interpreted as imposing its system of adjusting claims of injured workmen upon all employers who are within its terms and who have not since the adoption of the 1917 act filed notice of an election not to come within it.

After the adoption of the amendment of 1913, and after the railway company had given notice of its election not to come within its provisions, the road was placed in the hands of a receiver, who also gave notice of a similar election, an action necessary on his part to avoid being subject to the statute. (*Unrine v. Railroad Co.*, 104 Kan. 236, 178 Pac. 614.) The receiver operated the road for something over two years, and it was restored to the company on June 24, 1917. The suggestion is made that in this situation a new notice would have been necessary to take the company out of the statute even if, except for the receivership, the rule would have been different. This, however, need not be determined.

2. The appellants also contend that because Fuller was a minor when the accident occurred he was not bound by the provisions of the law making the statute applicable to employees who filed no notice of an election to the contrary. (Gen. Stat. 1915, § 5939; Laws 1917, ch. 226, § 24.) The argument is that the matter is contractual, and that a minor is not bound by his contracts. The compensation act by various references to minor workmen fairly shows an intention to bring them within its provisions. It is competent for the legislature to place upon minors the obligation of an affirmative election not to come within the compensation act in order not to be subject to its provisions (*Young v. Sterling Leather*

*Works,* 91 N. J. L. 289), and this it appears to have done. If the result sought to be attained is inconsistent with the general law with respect to the extent to which a minor is bound by his contracts, then the more recent act controls, the prior law being repealed by implication to the extent of the conflict. Provision is made in the statute for any right, privilege or election accruing to an "injured workman" being exercised in his behalf by his guardian (Gen. Stat. 1915, § 5904), but the language obviously has no relation to the choice between coming within the law or rejecting its provisions before injury. The attention of the legislature having been directed to the matter of guardianship, and no provision having been made for the action of a guardian in the matter of electing whether to come within the law or not, the inference seems just that the intention was for the minor to be left to make his own choice, or to change the choice which the state may be deemed to have made for him in the first instance.

The judgment is affirmed.