No. 23,534.

PAUL B. BAILEY, *Plaintiff,* v. N. A. TURNER, as State Auditor, *Defendant.*

### SYLLABUS BY THE COURT.

1. MANDAMUS—*Refusal of State Auditor to Issue Warrant—Validity of Claim Determined in Mandamus Proceedings.* Where the state auditor refuses to approve a claim against the state for services performed by one acting as an officer, basing his refusal upon the ground that the claimant was disqualified to hold the office, and for that reason was not entitled to compensation, the facts not being in dispute, the validity of the claim may be determined in a proceeding in mandamus to compel its approval by the auditor, notwithstanding the legality of the claimant's title to the office may incidentally be involved.

2. COURT STENOGRAPHER—*Relative of District Judge—Stenographer Disqualified to Hold the Office.* A relative of the district judge, who was court reporter at the time the statute in reference to his office was revised, and continued thereafter to act in that capacity, is held to be within the operation of a clause inserted in the revision providing that no reporter shall be related to the judge.

3. SAME—*No Adverse Claimant.* A proceeding to enforce the payment of salary cannot be maintained by one who has performed the duties of a public officer for which he is by law disqualified, even where there is no adverse claimant.

4. SAME—*The Decree of Relationship Which Would Disqualify a Stenographer to Hold the Office Stated.* Assuming that the provision of the statute that no court reporter shall be related by blood to the judge is not intended to disqualify as reporter every one having a common ancestor with the judge, however remote, it may reasonably be construed as applicable only to cases of blood relationship within the ninth degree, that connection being sufficiently remote to be practically negligible as affecting the attitude of the persons concerned toward each other—a principle recognized by the common law.

Original proceeding in mandamus. Opinion filed April 23, 1921. Writ denied.

*Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the plaintiff.

*Richard J. Hopkins,* attorney-general, *E. W. Clausen,* and *W. C. Ralston,* assistant attorneys-general, for the defendant.

The opinion of the court was delivered by

MASON, J.: Paul B. Bailey brings this proceeding asking a peremptory writ of mandamus requiring N. A. Turner, the state auditor, to approve his claim for services during March, 1921, as official reporter of a district court, and to issue him a warrant therefor. The defendant resists the order and justifies his action upon the ground that the plaintiff, being a nephew of the district judge, is disqualified from holding the office of reporter by the provisions of a statute which became effective March 2, 1921. The cause is submitted for a decision upon the pleadings.

1. The plaintiff contends that his title to the office the duties of which he is performing can only be challenged in a direct action brought by the state (or by an adverse claimant) and that the course pursued by the auditor amounts to a collateral attack upon it. If the plaintiff is disqualified to hold the office of court reporter and this fact prevents his having a legal demand against the state for compensation for the services he has rendered while acting in that capacity, this court will not compel the defendant to approve his claim and issue a warrant therefor. The defendant is not a mere ministerial officer; he is "an auditor, and may properly refuse a warrant to pay any claim which does not constitute a legal liability of the state, because of either matter of law or matter of fact." (*Cates v. Knapp,* 104 Kan. 184, 186, 178 Pac. 447.) In a proceeding like the present one the court has passed upon the merits of the auditor's interpretation of the law even to the extent of declaring a statute unconstitutional (*Reilly v. Knapp,* 105 Kan. 565, 185 Pac. 47), a ruling which of course would not have been resorted to unless it had been regarded as necessary to a determination of the case.

2. A law was enacted at the recent session of the legislature in the form of a new statute relating to court reporters. (Laws 1921, ch. 171.) While not in terms amendatory its language corresponds closely with that of former statutory provisions (Gen. Stat. 1915, §§ 2995, 2997, 2998, 2999, 3000) for which it is a substitute. The principal changes are: the substitution of "shall" for "may, . . . in his discretion," in the clause relating to the judge's appointment of a stenographer; an in-

crease in compensation; a requirement that the county board shall furnish the stenographer an office in the courthouse; and the insertion of the provision concerning relationship to the judge which is the cause of the present controversy. The first section of the new laws reads:

"The judge of each district court of the state of Kansas, and, in case said court consists of two or more divisions, then the judge of each division thereof, shall appoint a shorthand reporter, who shall be qualified as provided by law, shall be a sworn officer of the court, and known as the 'official reporter of the ———— judicial district of the state of Kansas, (Division No. ————),' and shall hold his office during the pleasure of the judge appointing him: *Provided, however,* That no reporter shall be related by blood to the presiding judge of the court wherein he is employed." (Laws 1921, ch. 171, § 1.)

The plaintiff had been appointed and was acting as court reporter when this act was passed, and has acted continuously without any new designation. He contends that the statute means that after its enactment a judge shall not appoint a relative as stenographer, but that its purpose is not to prevent one who had been appointed previous to that time from continuing to act. Although the new law is in a sense amendatory of that which it supersedes, it creates a new situation. The position of court reporter is given a more definite official status. The appointment of such an officer is made mandatory instead of discretionary. The rule that "the provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment" (Gen. Stat. 1915, § 10973, subdiv. 1) "implies that ordinarily language of an earlier statute which is preserved in an amendment is deemed to speak as of the time of the original enactment, and not of the later one." (*Railway Co. v. Fuller,* 105 Kan. 608, 610, 186 Pac. 127.) The original section for which that above quoted is substituted read "The judges of the district courts of the state of Kansas may each, in his discretion, appoint a stenographer, who shall act as official reporter and be a sworn officer of the court, and shall hold his office during the pleasure of the judge appointing him." (Gen. Stat. 1915, § 2995.) The words of the new act "The judge of each district court . . . shall appoint a shorthand reporter" can hardly be regarded as speaking as of the time of the earlier enactment, for they were not used therein.

Bailey v. Turner.

The plaintiff advances the theory that he holds his place as court stenographer under his original appointment until his successor is named. We are aware of no law giving him that tenure. He was selected for no definite period. He held his place only during the pleasure of the judge, and could continue to hold it only by his express or implied permission, and that permission, however given, may be regarded as amounting to a new appointment. The language of the new act is not that no reporter shall be appointed who is related to the judge but that no reporter shall be related to him. This is the more significant because this court had previously said there was force in the contention that a statute providing that no person should be appointed to an office by a relative did not forbid one who had already been appointed in that manner from continuing to act. If the purpose of the act under consideration had been merely to prevent an addition to the number of relatives of judges who were already serving as court stenographers it seems probable that the draftsman would have used language at least as appropriate to that purpose as that of the statute considered in the case just cited. We conclude that the legislature intended to prevent the retention of stenographers already in office who were related to the appointing judge, as well as to forbid the selection of new ones.

3. The plaintiff also contends that in any event his claim should be allowed because he has performed the duties of the office while he was at least a *de facto* officer and while there was no other claimant of the place. There is authority for the view that a *de facto* officer is entitled to compensation for his services under such circumstances, and that some of the cases apparently holding the contrary were decided without giving consideration to the fact that there was no adverse claimant. (22 R. C. L. 599, and cases and notes there cited.) It has been explicitly held in this state, however, that the rule that a merely *de facto* officer cannot maintain an action for his salary "is not restricted in its application to offices to the emoluments of which there are more than one claimant." (*Garfield Township v. Crocker*, 63 Kan. 272, 274, 65 Pac. 273.) If all that the occupant of an office lacked of a *de jure* title grew out of the fact (for illustration) that the official oath had not been administered to him, there might be good ground for holding him

entitled to the salary. But where he is disqualified to hold the office a very different situation is presented and we feel constrained to the view that the general rule applies. Of course it would be competent for the legislature hereafter to authorize payment to be made for the services that have been performed by the plaintiff.

4. The final contention of the plaintiff is that the portion of the new statute forbidding the reporter to be a blood relative of the judge is without effect because it is too vague to admit of enforcement; that it cannot be supposed that the legislature intended literally to exclude every one who had a common ancestor with the judge, however remote; and that there is no way by which any definite limit can be placed upon it. If the legislature should see fit explicitly to declare that the court reporter should not be descended from any progenitor of the judge, no matter how far removed from either, there might be a theoretical difficulty in its absolute enforcement because of the impossibility of determining to a certainty that any two persons did not have a common ancestor. But no serious embarrassment to public business would be experienced from its reasonable enforcement because in most cases it would be practically impossible to show any relationship unless it should be within a few degrees. If, however, the statute is regarded as incapable of enforcement if interpreted literally we are not without a basis for a reasonable interpretation which will result in a definite limit upon the broad language used.

We have had in this state for many years statutes disqualifying jurors in civil cases who are "of kin" to either party (Gen. Stat. 1915, § 7182), and in criminal cases who are "of kin" to the injured person or the prosecutor or defendant (Gen. Stat. 1915, § 8116); and disqualifying in civil cases judges who are "related to either of the parties" (Gen. Stat. 1915, § 6947), and in criminal cases judges who are "near of kin" to the defendant or the injured person. (Gen. Stat. 1915, § 8087.) Similar laws exist in other states. (For instance, see §§ 1357, 1429, 2630 and 4011, R. S. Mo., 1919.) We are not aware of any difficulty having been experienced in the enforcement of these provisions or of their validity having been challenged. According to Coke a juror was formerly subject to challenge "Without any act of his, as if the juror be of blood or kindred to either partie, *con-*

*sanguineus,* which is compounded *ex con & sanguine, quasi eodem sanguine natus,* as it were issued from the same blood; and this is a principal challenge, for that the law presumeth that one kinsman doth favour another before a stranger; and how far remote soever he is of kindred, yet the challenge is good." (1 Coke upon Littleton, p. 157 a.) The accepted view, however, is that at the common law the juror was disqualified only by relationship within the ninth degree, the computation being made according to the civil as distinguished from the canon law. (17 A. & E. Encycl. of L., 2d ed., 1124; 24 Cyc. 273.) This implies a conception that beyond this degree the relationship is too remote to affect the practical affairs of life. There is little difficulty in interpreting the statute relating to the disqualification of jurors as referring to kinship within the degree indicated, by analogy with the common law on the subject; or in extending the analogy to the change of venue acts, and to the enactment now under consideration. Assuming that the legislature did not intend to render ineligible to the office of court reporter all persons having any ancestor, however distant, in common with the judge, we think it a reasonable construction to hold that in applying the prohibition connections beyond the degree mentioned are to be disregarded.

Upon these grounds the writ asked for is denied.