Hempstead v. Hospital Association.

---

No. 24,541.

C. E. HEMPSTEAD, *Appellee,* v. THE A. T. & S. F. HOSPITAL ASSOCIATION et al., *Appellants.*

SYLLABUS BY THE COURT.

1. MANDAMUS—*Asking Recognition as Trustee of Private Corporation—Answer Disqualification of Plaintiff—Want of Good Moral Character—Answer States a Good Defense.* Where one claiming to have been elected as a member of the board of trustees of a private corporation brings mandamus against the other trustees to compel them to recognize him in that capacity, an answer setting out that he is ineligible by reason of a disqualification involving turpitude states a good defense, notwithstanding the general rule is that in mandamus brought to obtain possession of an office it is sufficient for the plaintiff to show a *prima facie* title and that the ultimate right to the office cannot be adjudicated in that proceeding.

2. SAME—*Answer Alleges Plaintiff Was Guilty of Embezzlement.* The answer is held to have contained a sufficient allegation that the plaintiff was guilty of embezzlement.

3. SAME—*Plaintiff Charged With Having Committed Embezzlement—Reformation Not Presumed.* The fact that one has committed an offense involving turpitude, such as embezzlement, is conclusive evidence that he was not, at the time, of good moral character, and reformation is not to be presumed merely from the lapse of a brief period.

4. SAME—*By-laws of Private Corporation—Good Moral Character An Essential Qualification to Hold Office of Trustee.* Where a stipulation is entered into in an action between the state and a railway hospital association, a private corporation, providing for the election of a part of the trustees of such association by the railway employees contributing to its support, and containing a provision that "all of the trustees shall be persons of good moral character," the possession of a good moral character becomes an essential qualification to hold the office, and one who has recently been guilty of a public offense involving turpitude, such as embezzlement, is not eligible thereto, unless upon a showing of reformation, and his ineligibility is not affected by the fact of his having received a plurality of votes at the election.

Appeal from Shawnee district court, division No. 1; JAMES A. McCLURE, judge. Opinion filed November 4, 1922. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellants.

*James A. Troutman,* of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Atchison, Topeka & Santa Fe Hospital Association is a corporation formed for the purpose of providing medical and surgical treatment for the employees of the Santa Fe and associated railway companies. Prior to 1921 its affairs were managed by five trustees, three of them being such *ex officio* by virtue of holding certain offices in the Santa Fe railway company, the other two being selected from the employees of that company by its president. In that year an action by the state was brought in this court against the hospital association and its trustees challenging among other things the validity of the method by which the two trustees were chosen. That action was dismissed upon the entrance into a stipulation providing for the amendment of the by-laws so that the two trustees to be selected from the employees should be chosen annually at an election in which each employee contributing to the support of the association should be entitled to vote. The stipulation contained the sentence: "All of the trustees of the association shall be persons of good moral character." Pursuant to the arrangement indicated the by-laws were amended and an election was held in May, 1922, at which the candidates receiving the highest number of votes were R. L. Beeman, who had 12,531, and C. E. Hempstead, who had 9,224. Beeman at once assumed the duties of trustee and has been acting as such. Hempstead attempted to do so but was prevented by the refusal of the other four trustees to recognize him in that capacity. He brought a proceeding in mandamus in the district court seeking a writ compelling such recognition. The defendants filed an answer (supplemented by an amendment) undertaking to justify their conduct on the ground that the plaintiff was not a person of good moral character, inasmuch as he had at one time been prosecuted for forgery, and had lately, while treasurer of an organization of railroad employees, been guilty of embezzling the sum of $17,500. A demurrer to the answer was sustained, and the defendants appeal.

1. The defendants assert that by reason of the provision of the stipulation referred to, which was incorporated in the by-laws, that all trustees shall be persons of good moral character, the plaintiff

being an embezzler is ineligible to that position and therefore they cannot be required to recognize him in that capacity. The plaintiff among other things contends that the defendants are not entitled to question his eligibility and that it cannot be litigated in this proceeding.

It is often said that the title to an office cannot be tried in mandamus. This is a general, but not a universal rule. Quo warranto is the proceeding adapted to the trial of the direct issue of the title to a public office, particularly when made between two contesting claimants. But where a plaintiff asserts a right which is dependent upon his being a public officer there is no inherent and compelling reason why the fact in that regard may not be determined in the proceeding in which it is asserted, although that happens to be mandamus. (*Bailey v. Turner*, 108 Kan. 856, 197 Pac. 214.) There is, however, a rule, which is supported by most but not all the decisions on the subject, that the claimant of a public office who brings mandamus to be put into possession of it need only show that he has a *prima facie* right—such as a certificate of election—and the defendant will not be permitted in that proceeding to go into the question of his eligibility or of the regularity of his selection, such matters being required to be determined by an action to oust him by quo warranto. (18 R. C. L. 263; Note, L. R. A. 1915A 833.) That rule, although a wholesome one, is founded upon convenience and policy and not upon jurisdiction. It is based on the theory that, pending the decision of what may be protracted litigation to determine the ultimate right to an office, it is better that he who has the apparent right—the color of title based on the face of the official returns—shall fill the place, the presumption being for rather than against the validity of his claim. So the holder of the paper title is allowed the speedy remedy of mandamus to gain possession of the office, while he who would challenge his right is relegated to the presumably slower machinery of quo warranto. Whether this rule should be extended to claimants of offices in private corporations does not appear to have been often before the courts. There is a tendency to accord the same treatment to such claimants as to those asserting a right to public offices. (18 R. C. L. 172.) A different practice is indicated by this text statement, to which, however, no case is cited upon the precise point covered by the last clause: "Nor will it [mandamus] be granted where the relator's right to the [corporate] of-

fice is not clear, as, for example, when by reason of a personal disqualification he is ineligible thereto." (26 Cyc. 354.)

Whether or not the rule referred to should apply with equal force with respect to offices in private corporations, it should be extended no further than the reason for it justifies. In our judgment, when the right of one who seeks by mandamus to obtain possession of an office involving (as that now under consideration does) grave responsibilities, financial and otherwise, is challenged in good faith on the ground that he is ineligible because of a disqualification involving turpitude, no public policy requires that he be allowed to perform its duties until the fact in that regard can be judicially determined. If the plaintiff is for the present kept out of the office and finally adjudged to be entitled to it, the association will in the interval have been deprived of the services of an officer competent to act, but this does not outweigh the consideration that if he is now installed and is later found to be ineligible because guilty of embezzlement, the affairs of the association will in the meantime have been administered by a proved felon whose claim of title was invalid. To hold the plaintiff's demurrer to be well founded is to say that even if he is a confessed embezzler (for so the answer alleges) the court should order him to be placed in a position of trust until that fact shall be established in a new action brought for the purpose of getting him out of it. The impolicy of judicially inducting into office one who is disqualified by want of good moral character is not overcome by the fact that he can afterwards be removed by a judgment in quo warranto unless such result should be prevented by the expiration of his term. "The writ [of mandamus] is employed to promote principles of justice. It will not issue in support of unjust claims, although they may be technically regular." (*State v. Hare*, 78 Or. 540, 549.) "It [mandamus] issues to remedy a wrong, not to promote one, and will not be granted in aid of those who do not come into court with clean hands." (*Turner v. Fisher*, 222 U. S. 204, 209.)

The defendants are of course not the judges of the plaintiff's eligibility; they are not entitled to decide that question. But when they undertake to justify their refusal to recognize him as a trustee by pleading that he is disqualified by reason of lack of moral character a court should not issue a writ of mandamus compelling them to do so, upon pleadings requiring the assumption that he is an unrepentant embezzler.

Hempstead v. Hospital Association.

2. The plaintiff invokes the rule that a demurrer admits only facts that are well pleaded, and contends that the answer does not say that he was guilty of embezzlement, but merely that the defendants had received information to that effect. The language of the pleading bearing on this is as follows:

"Within a short time before the result of the vote for the selection of two trustees of the defendant Hospital Association was announced, the defendants received information that the plaintiff, C. E. Hempstead, who had theretofore for several years occupied the position of Treasurer of the Brotherhood of Locomotive Firemen and Enginemen, a labor organization having members employed on the said railways, and contributing to The A. T. & S. F. Hospital Association fund, had become a defaulter to his Brotherhood, and was short in his accounts, as such Treasurer and as custodian of the funds of said Brotherhood of Locomotive Firemen and Enginemen, in the sum of about $17,500.00; and on May 20, 1922, in the presence of W. K. Etter, Acting General Manager of The Atchison, Topeka and Santa Fe Railway Company, the plaintiff, C. E. Hempstead, confessed that he had been short in his accounts to the amount above stated, but asserted that said shortage had been made up by a payment of $6,000.00 in cash and by securities given to his Brotherhood for the remainder. . . . and defendants aver that the action of plaintiff in failing to account for the moneys received by him as Treasurer of the Brotherhood of Locomotive Firemen and Enginemen was, in legal effect, an embezzlement of the funds of said Brotherhood, and involved moral turpitude and a lack of good moral character.

. . . . . . . . . . . . . . . .

"Defendants further aver that the Brotherhood of Locomotive Engineers and the Order of Railway Conductors, whose members are employed by The Atchison, Topeka and Santa Fe Railway Company and its auxiliary lines, and who contribute to the support and maintenance of The A. T. & S. F. Hospital Association, defendant herein, and whose membership is very numerous, have protested to the defendants in writing against the recognition of plaintiff as a trustee of said Hospital Association, for the reason that his acts and conduct as Treasurer of the Brotherhood of Locomotive Firemen and Enginemen, as above set out, do not justify the defendant trustees above mentioned in recognizing him as a person of good moral character, qualified to act as trustee of the Hospital Association."

The rule that as against a demurrer only facts well pleaded are to be considered is subject to some qualification. Statements are given effect when the attack is by demurrer that would require elaboration if challenged for indefiniteness by motion. If the facts necessary to a cause of action or defense "can be inferred by reasonable intendment from the matters which are set forth" (Pomeroy on Remedies and Remedial Rights, § 549) a demurrer does not lie. The expression that the defendants at a certain time learned of the em-

bezzlement seems to have ·been employed to explain why no earlier action had been taken by them. Whatever want of directness .results is cured by the specific allegation that "the action of plaintiff in failing to account for the moneys received by him . . . was, in legal effect, an· embezzlement."

3. The answer alleged, also, that in 1901 the plaintiff had forged several checks, amounting to $400, and had been arrested on that account but was discharged by reason of the loss being made good. A record produced by the plaintiff at the hearing in this court recites that he was arrested and bound over on a charge of forging a check for $15, a memorandum indicating that the case was dismissed in the district court. The remoteness in time of this episode is probably sufficient to admit a presumption of reformation, and the allegation is rather makeweight than of independent force. The time of the alleged embezzlement is not specifically pleaded, although there is room for an inference of its being recent. In the oral argument it was said by the defendants' attorney to have taken place in 1921. The allegation that the plaintiff committed embezzlement is a sufficient specification to sustain the more general averment of want of good moral character. The commission of an offense involving turpitude is conclusive evidence of the lack of that qualification at the time—certainly it would not be contended that such an embezzlement as that described in the answer was consistent with good moral character—and an inference of reformation is not to be drawn merely from the lapse of a brief period. The answer does not in terms allege that the plaintiff has not reformed, but·says that by reason of the facts stated he is not a man of good moral character. No further pleading on the part of the plaintiff is required in mandamus, but if the embezzlement should be established and reformation should be relied on the burden of showing it would be upon him.

4. It is argued in the brief of the plaintiff that the vote by which he was elected by his fellow employees "was a declaration of confidence in him and a *prima facie* decision that he was a man of good moral character." Unless the voters at the time of the election knew the plaintiff was an embezzler (as he must be assumed to be for the purpose of the argument) their opinion as to his character could carry little weight for any purpose. And in any event their decision could not affect the fact. If the voters by declaring a man to be of good moral character could determine that issue and render him

eligible to membership in the board of trustees the provision inserted in the stipulation in that regard would be merely advisory—without any practical effect whatever. The declaration that "all of the trustees shall be persons of good moral character" imposes an absolute disability upon anyone not having that qualification. It is of the greater force because it is not merely an item in an enumeration of qualifications to fill the office; it is a limitation upon the right to select trustees by popular vote imposed as a part of the very document by which that right was created. A question of eligibility to hold office is not to be determined by the result of an election. We hold that the answer states a defense.

The judgment is reversed and the cause is remanded with directions to overrule the demurrer to the answer.