### No. 24,822.

J. S. BALL, *Appellant*, v. THE RED SQUARE OIL & GAS COMPANY and THE OSAGE OIL CORPORATION, *Appellants;* THE INDEPENDENT TORPEDO COMPANY; THE FARMERS STATE BANK OF NEOSHO FALLS, and THE BRADFORD SUPPLY COMPANY, *Appellees*.

#### SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Action Against Owners—Receiver Appointed—Interpleas Filed—Notice of Interpleas.* Where in an action against a foreign corporation owning an oil and gas lease, brought by a creditor claiming a lien on the production, upon whose application a receiver has been appointed to operate the lease, other persons having claims against the defendant and the property are allowed to interplead, the defendant is required to take notice of their interpleas without the service of new process.

2. SAME—*Decree Ordering Sale—Order Interpreted.* The language of a decree ordering the sale of property and the application of a part of the proceeds to the costs of the receivership and like matters is interpreted as meaning that only such items are to be so paid as have been allowed by the court.

3. SAME—*Petition Good Against Demurrer.* Under the very liberal construction to which a pleading is entitled where it has not been attacked by motion or demurrer, the petition is held to set out sufficiently the plaintiff's cause of action.

4. MECHANIC'S LIEN—*Liens for Labor and Materials—Obvious Error in Statute—Statute Construed.* The statute giving a lien for labor and material furnished for the development or operation of an oil and gas lease refers, for means of its enforcement, to other statutes, one of which it describes as certain sections of chapter 168 of the Laws of 1899. The chapter so designated relates only to assignments of mortgages, but chapter 168 of the Laws of 1889 relates to mechanic's liens. It is held that the obvious intention was to refer to the latter chapter, and the statute is given effect accordingly.

5. SAME—*Lien Statement—When Sufficient.* Although under the statute above referred to a lien is allowed only for material actually used on the premises against which the claim is made, there is no requirement that such fact shall be made to appear in the lien statement. Where the claimant is a corporation an affidavit to the lien statement made by an agent need not recite that he has personal knowledge of the facts.

6. SAME—*Certain Pipe-line Used in Marketing Oil—Included Within Operation of Mechanic's Lien.* A pipe-line constructed and used solely for the marketing of the product of a particular oil and gas lease, although extending beyond the boundaries thereof, is within the operation of the statute giving a labor or material lien "upon the whole of such leasehold . . . the building and appurtenances . . . and upon said oil and gas well for which they were furnished, and upon all the other oil wells, fixtures and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished and labor performed."

7. SAME—*Matters of Procedure.* Objections upon various matters of procedure are held not to require a reversal.

8. OIL AND GAS LEASE—*Contract Relating to Division of Production.* Where the owner of one-eighth of an oil and gas lease has a contract with the owner of the other seven-eighths by which the latter is to pay all the expenses of operation and the former is to receive one-eighth of the product free of charges therefor, a lien under the statute above referred to extends to the entire lease, including the one-eighth interest the owner of which, as between himself and the owner of the other seven-eighths, is relieved from liability for operating expenses.

9. SAME. In the situation stated in the foregoing paragraph mere unsecured contract creditors of the owner of the seven-eighths interest, who is engaged in operating the lease, have no right to look to the one-eighth interest for payment.

10. SAME—*Sale of Lease Under the Lien Statute—Period of Redemption.* Assuming that even before the amendment of 1923 the statute intended sales of oil and gas leases under the lien statute to be made without a right of redemption, the fact that a receiver was ordered to sell such a

lease with a reservation of that right is not a ground of complaint by a party having no lien by statute and none by contract except against the production, the court, so far as he was concerned, having had a large discretion with respect to the disposition of the property.

Appeal from Woodson district court; Robert E. Cullison, judge. Opinion filed June 18, 1923. Modified and affirmed.

*A. R. Enfield, Charles H. Apt, Frederick G. Apt, Oscar Foust, John W. Brown, Kenneth H. Foust,* all of Iola, *G. H. Lamb, W. E. Hogueland,* both of Yates Center, *James M. Johnson, Frank W. Yale,* and *Ernest S. Ellis,* all of Kansas City, Mo.; for the appellants.

*W. N. Banks, O. L. O'Brien, Walter L. McVey, Jay W. Scovel,* all of Independence, *Travis Morse, E. W. Myler, Oscar Foust, John W. Brown, Kenneth Foust,* all of Iola, and *E. E. Lamb* of Yates Center, for the appellees.

The opinion of the court was delivered by

Mason, J.: J. S. Ball brought against the Red Square Oil & Gas Company an action upon a claim for services, in which a receiver of an oil and gas leasehold was appointed. A number of interpleaders asserted claims against the property involved. Final judgment was rendered in favor of the plaintiff and the interpleaders, providing among other things for a sale of the property. The Red Square Company, which will be referred to as the defendant, appeals from practically the entire judgment and the plaintiff appeals from so much of it as directs the sale to be made subject to a right of redemption as in the case of real estate. An appeal is also taken by the Osage Oil Company, an interpleader.

As a part of this appeal the defendant presents the objections to the receivership which have already been considered and passed upon in the appeal from the overruling of the motion to discharge the receiver (*Ball v. Oil & Gas Co.*, ante, p. 760) the two appeals having been heard together.

1. All but one of the interpleas asserted specific claims against the property. The defendant was not served with summons or other formal notice of their filing. Its attorneys, however, appeared at the trial of the issues so presented, although they introduced no evidence. The rule in this state is that a defendant once served is bound to take notice of the subsequent proceedings—including pleadings filed by new parties. (*Shellabarger v. Sexsmith,* 80 Kan. 530, 103 Pac. 992.) There are some reservations in the application of the rule (*Beekman v. Trower,* 82 Kan. 327, 108 Pac. 110), but

they do not apply here. The defendant was present by his attorney at the trial of these interpleas, and having made no application to plead or introduce evidence, is not in a position to complain of the enforcement of the rule.

2. The order for the disposition of the proceeds of the sale of the property included a direction for the payment therefrom of the costs of the administration of the receiver and similar items—for instance the compensation of the receiver. This portion of the judgment is attacked as an attempt to delegate to the receiver the judicial power of determining the amount and validity of such claims against the fund. We interpret the language as meaning that the various items referred to shall be paid only as they are fixed and allowed by the court, and as so interpreted the objection does not apply.

3. The plaintiff's judgment is attacked on the ground that his petition was fatally defective in that it did not distinctly allege that he had a contract with the defendant, or the terms of the contract if he had one. Even against a demurrer a petition is liberally construed and held sufficient if the facts stated, whether well pleaded or not, with all the reasonable inferences to be drawn therefrom, constitute a cause of action. (*Bowersox v. Hall,* 73 Kan. 99, 84 Pac. 557; *Gano v. Cunningham,* 88 Kan. 300, 128 Pac. 372; *Roberts v. Pendleton,* 92 Kan. 847, 142 Pac. 289; *Hempstead v. Hospital Association,* 112 Kan. 241, 245, 210 Pac. 492.) And where the petition is not attacked by motion or demurrer a still more liberal rule of construction is adopted. "After answer filed, an objection to a petition that it does not state facts sufficient to constitute a cause of action is good only when there is a total failure to allege some matter which is essential to the relief sought, and is not good when the allegations are simply incomplete, indefinite, or statements of conclusions of law." (*Laithe v. McDonald,* 7 Kan. 254, 261.) The petition alleges that the plaintiff began drilling and developing the lease at the request of "the then owner," and continued it after the purchase by the defendant shortly thereafter; that the defendant had been indebted to him on account thereof in the sum of $9,410.75, for a part of which it had given in two notes for $2,000 each, the debt at the time the action was begun being $8,300.65, for which a recovery was asked. The answer admitted a contract to pay the plaintiff $1.50 and $1.75 a foot for drilling wells. The omission of

the petition to state specifically that the work sued for was done under contract with the defendant, and its failure to specify the number of feet drilled, are not now a just cause of complaint.

The plaintiff's judgment was for $9,041.90, which obviously included the amount for which the notes were given. The defendant asserts that the recovery was too large by the amount of the notes, because they were not sued upon; that if the plaintiff had desired to recover upon them he would have been obliged to plead them as separate causes of action and attach copies; and that the notes may be outstanding in other hands. The petition, from what has already been stated, is shown to have sought a recovery of the full amount owing. A petition must be attacked by motion in order that advantage may be taken of a failure to meet the requirements of the separate statement of different causes of action (*Stewart v. Balderston,* 10 Kan. 131, 148) or that of attaching a copy of an instrument sued upon (*Burnes v. Simpson,* 9 Kan. 658.) The evidence has not been brought to this court and in its absence it cannot be presumed that the notes were not surrendered for cancellation.

It is urged that the allegation of the petition that the "defendant, through its officers," told the plaintiff he would have to get his payment from the production of the lease, is without effect because the officers referred to are not named, and "if they were named, it would not matter, for even the president, the highest officer of a corporation, cannot without express authority from the board of directors, create a valid lien upon the company's property." The allegation of the petition is that the defendant made the statements; it could only do this through its officers or other representatives, so the necessary implication is that whoever acted for it did so with authority, for otherwise the act would not be that of the corporation.

4. The defendant asserts that the lien set up by the Independent Torpedo Company was ineffective because no procedure is provided by the statute for the enforcement of such a lien. The basis for this contention is that the statute giving a lien for labor and material furnished on oil and gas leases reads that such lien shall be enforced "in the same manner as provided for in sections 2 and 3 of chapter 168, Session Laws of Kansas for the year 1899, and all actions brought for the purpose of enforcing any such liens shall be governed by article 27, chapter 80 of procedure civil [the mechanic's lien statute], as provided in the General Laws of Kansas for the year 1901." (Gen. Stat. 1915, § 4998; Laws 1909, ch. 159, § 3.) Chapter

168 of the Laws of 1899 relates only to the assignment of mortgages. The reference to it in the above quotation from the statute is an obvious error, the plain intention being to refer to chapter 168 of the Laws of 1889 (instead of 1899), relating to mechanic's liens. When sections 2 and 3 of chapter 168 of the Laws of 1899 were reprinted in the General Statutes of 1901, they were there described, by a clerical or typographical error, as sections 2 and 3 of chapter 168 of the Laws of 1899, which shows how the mistake in the act of 1909 originated. There is no difficulty whatever in giving the statute the effect obviously intended. (*Coney v. City of Topeka*, 96 Kan. 46, 149 Pac. 689; *Tatlow v. Bacon*, 101 Kan. 26, 165 Pac. 835; Note, 5 A. L. R. 996, 1003.)

5. The defendant further urges that the lien statement did not show that the material furnished was actually used on the premises described, but the statute does not require this to be shown in the statement. (Civ. Code, § 650.) The verification of the statement is criticised because made by an agent who is not shown to have had personal knowledge of the facts. The statute merely requires that the statement shall be "verified by affidavit." It was sworn to positively and not on information and belief, the affiant swearing that he was the agent for the claimant, a corporation. This was sufficient. The requirement of the code of civil procedure that affidavits made by an agent shall show why it is not made by the principal applies only to pleadings (*Johnson v. Laughlin*, 7 Kan. 359), and not to them in the case of an agent acting for a corporation (*Hornick v. U. P. Railroad Co.*, 85 Kan. 568, 118 Pac. 60.)

6. The property ordered to be sold, the proceeds to be applied to the lien of the Independent Torpedo Company after the payment of the costs of administration and like expenses, is described in the judgment as: "The said leasehold, being the oil and gas lease upon [describing the quarter section] and all the equipment, attachments, wells, casings, machinery and supplies used in or about said leasehold, and all pipe lines, pumps and tanks and attachments and equipment used in the transportation, marketing or production of oil from said leasehold." The defendant contends that it was error to include in the order "the pipe lines and other marketing equipment located at a distance and which were constructed and used in connection with other leases," because they were not covered by the lien. The lien statute reads:

"Any person, corporation or copartnership who shall under contract, express

or implied, with the owner of any leasehold for oil and gas purposes, or the owner of any gas pipe-line or oil pipe-line, or with the trustee or agent of such owner, who shall perform labor or furnish material, machinery and oil-well supplies used in the digging, drilling, torpedoing, completing, operating or repairing of any oil or gas well, or who shall furnish any oil-well supplies or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing or repairing of any gas well, shall have a lien upon the whole of such leasehold or oil pipe-line or gas pipeline, or lease for oil and gas purposes, the building and appurtenances, and upon the material and supplies so furnished, and upon said oil and gas well for which they were furnished, and upon all the other oil wells, fixtures and appliances used in the operating for oil and gas purposes upon the lease-hold for which said material and supplies were furinshed and labor performed." (Gen. Stat. 1915, § 4996.)

We think a pipe-line constructed and used by the owner of an oil and gas lease for the purpose of marketing the product of that particular lease may be regarded as within the operation of the statute quoted. The evidence not being before us, the presumption must be that the pipe-line included in the order referred to was of that character. The objection is also made that the description quoted is not sufficiently definite to indentify the property to be sold. We see no practical difficulty in ascertaining what property is meant, but if any develops it can be remedied by further order of the district court.

7. The Bradford Supply Company asserted a lien under the statute referred to. The trial court held the lien invalid but gave judgment upon the debt, which was evidenced by a note. The objection is made that the note was not due when the original action was begun. It was due when the interplea was filed, and in the situation presented that is sufficient. Although the lien was defeated, the claimant was entitled to a personal judgment for the amount due it.

The Osage Oil Corporation held a contract entitling it to one-eighth of the oil produced. In addition to other relief, it was given a judgment for $282.11, found due to it on that account at the time the receiver was appointed. The defendant complains of this allowance on the ground that it was relief not prayed for and the claim on which it is based was not pleaded. The interplea of the Osage Oil Corporation set out its right to one-eighth of the production, but did not allege that anything was due it on this account when the receiver took possession. The evidence must be presumed

to have sustained the judgment, and the journal recites that the defendant was present at the time. It is not suggested that the amount was not in fact owing. The pleading may be treated as amended to conform to the proof and finding.

The Farmers State Bank intervened, not claiming any lien, but asking and obtaining a personal judgment against defendant on an unsecured note. This is objected to by the defendant upon the ground that the bank had no right to intervene in this proceeding. While it is true the bank could have brought an independent action, it is not clear that the defendant (who is the only party claiming) was in any way prejudiced by the procedure adopted. The various claims against the defendant were tried separately, a jury trial being had upon the plaintiff's claim for a money judgment. There is no suggestion that the defendant did not in fact owe the amount claimed on the bank's note. It is true also that the action was not one for winding up the affairs of the defendant and distributing its property among those entitled thereto, nor was the receiver appointed for that purpose. But the suit involved the sale of the property to satisfy a lien, and the possession and operation of the property in the meantime by the receiver. The bank could have attached the property, even without giving a bond, the defendant being a foreign corporation, but for the receivership, which prevented it. The fact that its judgment is made payable out of the proceeds of the sale of the property, after liens and preferred claims have been satisfied, might be a ground of objection on the part of other creditors if they were prejudiced by it, but affords no just basis for complaint by the defendant, for it is merely required to pay an adjudicated obligation out of funds in the custody of the court.

8. The Osage Oil Corporation complains of the judgment, contending that the $282.11 allowed it should have been made a first claim upon the proceeds of the sale, that it should have been awarded an eighth interest in the personal property and equipment connected with the lease; and that the lease should have been ordered sold subject to the payment to it of a royalty of one-eighth. Its rights are to be determined under a contract between the Triangle Oil Company and the Kirsch Oil and Gas Company.

The Triangle company, while owning the entire lease, assigned to the Kirsch company, whose rights have passed to the defendant, a seven-eighths interest therein, "together with a seven-eighths interest

in all the presonal property used or obtained in connection there-with," the assignment being accompanied by a written contract which was made a part of it. This contract provided that the Kirsch company should operate the lease (commencing within 60 days and drilling eight wells within 2 years) and pay the Triangle company one-eighth of all the oil and gas produced, and that the Triangle company should be "in no manner liable for the cost of developing and equipping said lease." The contract also contained this clause: "And it is . . . agreed . . . that [the Triangle company] shall have recited in said assignment of the said oil and gas lease its one-eighth (⅛) paid-up interest in said lease, equipment and production." Later, the Triangle company assigned its rights to the Osage Oil Corporation.

Under this arrangement we think the entire lease, appurtenances and appliances were subject to the statutory lien; that the operation of the lease was for the benefit of the holder of the one-eighth interest as well as of the company engaged in the actual operation of the lease, which owned the other seven-eighths; that whatever arrangement was made by the owners of these respective interests between themselves as to who should pay the operating expenses, the lien for labor or material extends to the whole property—to the entire lease and its equipment.

9. Although we conclude that the holder of the statutory lien may look to the entire property for the payment of his claim, we see no reason why that privilege should be extended to general creditors or to the plaintiff, whose right is based upon a contract with the defendant. Although the order of sale properly covers the Osage company's one-eighth interest, one-eighth of the proceeds should be made payable to that company, subject only to a *pro rata* deduction on account of the Independent company's lien.

10. The plaintiff asks that the judgment be modified by ordering the leasehold to be sold as in the case of personal property, without allowing a right of redemption. It has been intimated by this court than an (undeveloped) oil and gas lease, when assigned as security, may be sold outright for the satisfaction of the debt, no period of redemption being allowed. (*Barton v. Oil Co.*, 112 Kan. 436, 446, 211 Pac. 608.) A new statute provides specifically that the right of redemption of property sold on execution or order of sale shall not apply to oil and gas leases or to oil and gas leasehold estates.

(Laws 1923, ch. 163, § 1.) The question here presented, however, is not whether in ordering sale of the lease the trial court might properly have refused a right to redeem, but whether the ruling allowing it was one of which the plaintiff can effectively complain. The holder of the statutory lien doubtless was in a position to insist upon the sale being made without the reservation of a right to redeem, if that is what the statute then in force contemplated. But the plaintiff's claim against the property is not of that character; it is based upon equitable considerations, in giving effect to which the trial court had a wide discretion. It cannot be said that error against the plaintiff was committed in ordering the sale to be made subject to redemption.

The judgment is modified to the extent of directing one-eighth of the proceeds of the sale to be paid to the Osage company, and in other respects is affirmed.