No. 30,743.

H. J. STOCKMAN et al., *Appellees*, v. THE PARSONS PIPE LINE CORPORATION et al., *Appellees;* AMERICAN METER COMPANY, Intervener, *Appellant.*

(14 P. 2d 653.)

Opinion filed October 8, 1932.

*Thomas E. Deacy,* of Kansas City, Mo., for the appellant.

*John Jones,* of Chanute, for appellees H. J. Stockman and H. C. Fees; *Carl V. Rice,* of Parsons, and *David A. Murphy,* of Kansas City, Mo., for appellees A. M. Lamport & Company and C. O. Moore; and *T. F. Morrison,* of Chanute, for appellees W. F. O'Brien and J. M. Piper.

The opinion of the court was delivered by

HARVEY, J.: This is an action to foreclose a second mortgage on the properties of the Parsons Pipe Line Corporation. Holders of the bonds secured by the first mortgage intervened and asked to foreclose that mortgage. A receiver was appointed and the action developed into a general receivership for the Parsons Pipe Line Corporation. The American Meter Company intervened and sought to foreclose a mechanic's lien for meters and parts and supplies therefor which it had furnished the Parsons Pipe Line Corporation. Trial was had before a referee, who made findings of fact and conclusions of law, which were later approved by the trial court and judgment rendered thereon, allowing to the American Meter Company a claim for the amount found due it as a general creditor, but denying its lien. From the latter part of that judgment the American Meter Company has appealed.

The sole question before us is whether the American Meter Company is entitled to the lien it claims. With respect to this claim the referee found that the American Meter Company filed with the clerk of the district court, on November 17, 1930, its lien statement against the Parsons Pipe Line Corporation; that the materials set out in the lien statement were supplied at the request of and under an agreement with the Parsons Pipe Line Corporation through certain of its officers; that the materials so furnished consisted of meters and meter supplies, including charts for use on the meters, and that the material was furnished during the period between November 19, 1929, and August 30, 1930, but that no materials were furnished under the agreement after May 17, 1930, except for certain charts for use in the meters, and unless such charts were lienable items, within the meaning of the statute, the lien statement was not filed within four months of the time the materials were furnished. The referee further found that there was due the American Meter Company from the Parsons Pipe Line Corporation the sum of $6,171.81, with interest since August 30, 1930. The referee held, as a conclusion of law, that the charts furnished the Parsons Pipe Line Corporation by

the American Meter Company are not lienable items within the meaning of our statute. The American Meter Company complains of that conclusion of law and argues that it should have been to the contrary. Hence the question for our determination is narrowed to whether the charts used in the meters constitute such an essential part of the meters as to be lienable.

The referee made no specific finding as to how the meters in question are constructed, or in just what way the charts are used in connection with their operation. However, under the evidence and briefs and oral argument of counsel there is little, if any, dispute about that. The Parsons Pipe Line Corporation constructed and operated a gas pipe line, collected gas from gas-producing wells on various gas leasehold estates, and transmitted the same through its pipe line to various cities which it supplied with natural gas. On each of the leasehold estates from which it collected gas it constructed, as a part of its pipe line, a meter designed and used for measuring the gas which passed from that particular leasehold into its pipe line. These meters were so constructed that as the gas passed through them the quantity of the gas was measured and recorded automatically on a chart, which is a circular piece of cardboard about eight inches in diameter, specifically made for the meter and used in it for the purpose of recording the quantity of gas which passed through it. Two styles of meters were used. In one of them the chart was sufficient in size and construction to record all of the gas which passed through the meter in a week. In the other it would record only the amount which passed through the meter in a day. When the charts had served their purpose in the meter, having recorded the quantity of gas passing through the meter for the time they were designed to make such record, they would be taken out and new ones put in. The charts which had been taken out would be taken to the office, the data from them entered on the books of the corporation and used to compute the sum due the owner of the gas leasehold estate for the quantity of gas taken from the leasehold. The chart was then laid away as a part of the permanent files of the corporation. What was done with the charts after they were taken out of the meters has but little, if any, bearing on this case. The question is, How essential were they to the use or proper functioning of the meters? It is not contended that they were designed or could be used for any other purpose.

In Thornton's Law of Oil and Gas, 4th ed., § 627, it is said:

"A meter . . . may be defined as an instrument, apparatus, or machine for measuring . . . gases . . . and recording the results obtained."

In Webster's International Dictionary a meter is defined as—

". . . An instrument for measuring, and usually for recording automatically, the quantity measured. Gas meters are of two kinds: . . . Both are automatic, with the necessary recording clock-work and dials."

The New Century Dictionary defines a meter as—

". . . an instrument that measures, especially one that automatically measures and records the quantity of gas, . . . passing through it, . . ."

From these definitions of a meter, which appear to be those in common use, it is clear that the recording device is an essential part of the instrument or machine. Obviously, for the meters in question in this case to be of value for the purpose for which they were installed, it was essential that they be equipped with charts. The charts are therefore as much a part of the instrument, device, or machine as any other portion of it. It is not contended that the meter is not a lienable item. It necessarily follows that essential parts of it used for replacement or repair constitute lienable items.

Appellee argues that the lien in any event could not be for the entire sum, since the meters and necessary parts therefor were ordered at different times, citing *Baxter v. Oil Co.*, 111 Kan. 621, 208 Pac. 568. The rule there applied is not applicable here for the reason that all the material for which the lien is claimed was purchased under one agreement. A similar question arose in *Sash & Sales Co. v. Early et al.*, 117 Kan. 425, 232 Pac. 232, where the rule was stated thus:

"If the materials had been furnished on a running account or upon a single continuous contract, plaintiff's claim, if filed within the statutory period after the last item was furnished, would warrant the claiming of a lien on the whole, but if the material was furnished and work performed upon separate contracts the time of filing could not be extended by furnishing material or performing labor under a second and distinct contract and the attempt to tack the same to the first." (p. 426.)

Appellee argues that since the Parsons Pipe Line Corporation did not drill or operate any gas well, but simply bought gas from those who do drill and operate gas wells, its property is not subject to a mechanic's lien under R. S. 1930 Supp. 55-207. We do not regard this as being a correct interpretation of the statute. That liens may

be had against gas pipe-line corporations is clear from the statutes. A line which takes gas from a well is to that extent, at least, assisting in the operation of a well. (*Ball v. Oil & Gas Co.,* 113 Kan. 763, 216 Pac. 422; *Meadows v. Oil Co.,* 108 Kan. 228, 194 Pac. 196.)

From what has been said it necessarily follows that the American Meter Company is entitled to a lien. Since its contract to supply material was made and material actually furnished under such contract before either of the mortgages foreclosed in this action was given, its lien is superior to the mortgages.

The judgment of the court below will be reversed, with directions to allow the claim of the appellant in the sum of $6,171.81, with interest at six per cent since August 30, 1930, as a lien on the properties of the Parsons Pipe Line Corporation superior to that of the mortgages foreclosed in this action. It is so ordered.