SETH H. WOOD v. H. BARTLING, *Mayor, et al.*

JUSTICES OF THE PEACE; *When Elected; When Term of Office Commences; Notice of Election.* Where the time for holding elections for justices of the peace in cities of the second class is fixed by law for the first Tuesday of April of each alternate year, but the law does not prescribe whether such elections shall be held in the odd years or in the even years, and does not prescribe the years within which the terms of office of justices shall commence, but leaves the times for their election, and for the commencement of their terms of office to be ascertained from the time when the *first* election for justices of the peace was held in and by such city, and the law further requires that the mayor shall issue a proclamation giving at least ten days' notice of each election to be held in such city "announcing the offices to be filled" at such election; and where the mayor, previous to an election at which two justices of the peace should be elected, issues a proclamation announcing that one justice only is to be elected, and the electors receive no other sufficient notice that two justices should be elected; and the electors believe that only one justice is to be elected, and each elector votes for only one candidate for that office, *held*, that only one justice is elected at such election, although more than one candidate may have received votes for the office.

## Original Proceedings in Mandamus.

WOOD, as plaintiff, filed in this court his verified petition for a mandamus to compel the *Mayor and City Councilmen of the City of Topeka*, to enter of record the fact that plaintiff had been duly elected to the office of justice of the peace of said city at the city election held on the 6th of April 1875, and to cause such election of plaintiff to be duly certified by the city clerk to the county clerk of Shawnee county. The record shows that at said city election votes were cast and

canvassed for the office of justice of the peace as follows: For Thomas Johnson, 655; for *Seth H. Wood*, 342; for Samuel S. Urmy, 324; for J. C. Chesney, 277. The mayor and council canvassed said votes on the 9th of April, and holding and deciding that one justice only was to have been chosen at such election determined that Thomas Johnson had received the greatest number of votes cast for that office, and was therefore duly elected as such justice. *Wood* claimed that two justices were to be and were elected, and that as he had received the second highest number of votes he also was entitled to a certificate of election and to such office. An alternative writ was issued. The defendants showed cause — claiming, as they had before decided, that only one justice was to be chosen at such election, and also, that notice for the election of one justice only had been given, and that the electors of said city respectively had voted for only one person for said office, instead of each elector voting for two persons as would have been the case if two justices were to have been elected.

*Seth H. Wood*, plaintiff, for himself.

*B. J. Ricker*, city attorney, and *David Brier*, for defendants.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of mandamus to compel the mayor, council, and city clerk of the city of Topeka to issue to the plaintiff a certificate of election showing that he was elected to the office of justice of the peace in and for the city of Topeka on the 6th of April 1875. All questions have been so arranged and disposed of by the parties that the only question for us to determine is, whether the plaintiff was duly elected to said office of justice of the peace or not. Involved in this question, however, are several others, which we shall consider as we proceed with this opinion. We think we may assume as among the established facts in this case, that there were two justices of the peace to be elected in the city of Topeka on the said 6th of April 1875; that the mayor however

issued his proclamation for the election of only one; that each elector voted to elect only one; that the electors did not in fact know that more than one was to be elected; that 1598 votes were cast for the various candjdates for that office, of which Thomas Johnson received 655 votes, Seth H. Wood, the plaintiff, received 342 votes, Samuel S. Urmy received 324 votes, and J. C. Chesney received 277 votes. The question is, whether upon these facts the plaintiff was duly elected to said office. The objections urged against his election are, that no notice was given or proclamation issued for the election of more than one justice of the peace, the electors believed that only one justice was to be elected, and they voted to elect only one—each elector voting for one person only for that office. Now it is true, that the plaintiff knew before the election, and at the time thereof, that two justices were to be elected, and he told several other persons so, and he thinks that one or two ballots were cast at that election in the first ward with two names for the office of justice of the peace thereon; but still the agreed statement of facts shows that "the electors in casting their ballots for justice left the name of but one candidate on their tickets, and so each elector voted for but one person for said office of justice of the peace;" and the fact undoubtedly is, that the electors, with scarcely any exceptions, did not know or even suspect or imagine that more than one justice was to be elected at that election. The voters were of course mistaken in supposing that there was but one justice to be elected at that election, but the mistake was clearly one of fact, and not one of law. Justices of the peace are elected in this state each for a term of two years; but there is no law designating when their terms shall commence, or in what years they shall be elected to fill such terms, and these questions depend upon the facts of each particular case. They really depend upon what year the *first election* for justices of the peace within the particular city or township where the inquiry is made took place. For instance, the first election held in and for and by the city of Topeka for justices of the peace was on April 5th 1869: hence,

the regular elections for that office in Topeka would be held in April in the years 1871, 1873, 1875, 1877, and so on, in every alternate year thereafter.   But if the first election had been held in 1868, or in 1870, instead of in 1869 as it was held, then all the regular elections held thereafter would have been held in the even years, instead of in the odd years as now held.   From this it will be perceived that the regular elections for justices of the peace may be held in the various cities and townships in the state in different years, and that no one can tell when a regular election for justices of the peace is to be held in any particular city or township except from proof, or evidence, or knowledge of facts.   This is not so with reference to state or county officers.   With reference to them the law (Gen. Stat. 427, 428,) fixes absolutely and uniformly throughout the state the time for their election. And therefore, as all persons are presumed to know the law, all persons are presumed to know when a state or county officer is to be elected, although he may receive no notice thereof from any other source.   (*George v. Oxford Township*, ante, 79.)   The courts will take judicial notice when state and county officers are to be elected. (*Ellis v. Reddin*, 12 Kas. 306.)   But courts cannot take judicial notice when justices of the peace are to be elected.   Or rather, courts may take judicial notice that justices of the peace are to be elected in April of each alternate year, (in cities of the second class, and in townships also up to 1875,) for the law thus far prescribes; but courts cannot take judicial notice as to which these alternate years are.   Courts cannot judicially know, except from evidence, whether these alternate years are the odd years, or the even years.   And probably voters, who receive no notice, actual or constructive, cannot be required to know more in this respect than the courts.   Under the laws of this state the mayor of each city of the second class, (and Topeka is such a city,) is required to issue a proclamation giving at least ten days' notice of each election, and "announcing the offices to be filled" at such election. (Laws of 1872, page 196, §17.)   Now probably if such a notice were given

the voters could not ignore the notice, and refrain from voting. Or, if the body of the voters were in fact to receive notice in any other manner, probably they could not ignore it. Or, if sufficient facts should come to the knowledge of the body of the voters to put them upon inquiry, possibly they could not ignore the election. This has been so held where the election was held at the same time and place of some other election which called out substantially all the voters, and the matter was discussed among the voters, and a large proportion of them voted upon the subject. But none of the foregoing cases is this case. In this case the body of the voters had no notice from any source, and they did not participate in the election. That is, they had no notice of an election for *two* justices, and each elector voted for only *one* justice. In fact, the notices that they actually received, from whatever source they came, might almost be construed into an actual and affirmative notice that there would be an election for only one justice. The first election by the city for justices was in 1869. The regular election would therefore have been held every alternate year thereafter. But instead of an election coming only once in every two years, there has been an election for one or more justices held in Topeka every year since 1869. In 1870 one justice was elected. In 1871 two were elected. In 1872 one was elected, and one of those elected the year before held over. In 1873 one was elected, and the one elected in 1872 held over. In 1873 the mayor's proclamation was for the election of only one justice, and only one was voted for by each of the electors. In 1874 one justice was elected, and the one elected the year before held over. And the one elected in 1874 was elected and .commissioned for two years, and he is now holding the office under that election. It will therefore be seen, that the whole city of Topeka has been laboring under a mistake as to the regular time for electing justices, and that the mistake originated at least as early as the spring of 1873. Now as this mistake is a mistake of fact, and not of law, we hardly think that it is sufficient to defeat the will of the voters. "The

real will of the people" should generally "not be defeated
by any informality." In the present case more than three-
fourths of the electors voted against the plaintiff; and should
less than one-fourth who voted for him override the will of
the other three-fourths who voted against him? Under the
circumstances of this case we think the law to be, that only
one justice was elected, and that such justice was not the
plaintiff. There was in fact no election for a second justice.
It has been held in many cases that a mere want of notice
will vitiate the election. (See authorities cited in case of.
*George v. Oxford Township,* ante, 80.) This is. generally so
where the law does not fix the time for holding the election.
But even where the law does fix the·time for holding the
election, it has been held that if no notice was given as re-
quired by law, and no notice was in fact received, and the
great body of the electors were misled by such want of notice,
they believing that no such election was in fact to be had,
and only about one-fourth of the electors voted at such elec-
tion, and they voted for a single candidate, such election is
void. *Foster v. Scarf,* 15 Ohio St. 532. See also *The State v.
Gœtze,* 22 Wis. 368, et seq. And it has several times been.
held, where a majority of the electors vote for an ineligible
candidate, that the election is a nullity, although eligible can-
didates may also have been voted for. (*Saunders v. Haynes,*
13 Cal. 145; *State v. Giles,* 1 Chandler, 112; *State. v. Smith,*
14 Wis. 497; *Commonwealth v. Cluley,* 56 Penn. St. 270;
*People v. Clute,* 50 N. Y. 451; *State v. Swearingen,* 12 Geo.
23; *State v. Gastinel,* 20 La. An. 114; Opinion of Judges,
38 Me. 597, et seq.) The person receiving the highest num-
ber of votes in such a case is not elected because of his in-
eligibility; and no other candidate can be considered as elected,
because a majority of the electors have expressed their will
and determination that he should not be elected. This rea-
soning fits the present case. In the present case the electors
chose to elect only one justice of the peace, and a vast ma-
jority of them voted against the plaintiff and for other can-
didates. The candidate elected received nearly twice as many

votes as the plaintiff. In our opinion there was no election for a second justice of the peace. An election should therefore be held in April of the present year (1876) to elect another justice to fill the unexpired portion of the term which should have commenced in April 1875.

Judgment in this case will be rendered for the defendants.

All the Justices concurring.