FLETCHER P. PRIVETT v. CHARLES D. BICKFORD.

1. POLITICAL DISABILITY—*Removal of, Before Taking Office.* Section 2 of article 5 of the constitution of the state, as amended November 5, 1867, ordaining that no person who has ever voluntarily borne arms against the government of the United States, or in any manner voluntarily aided or abetted in the attempted overthrow of the government, shall be qualified to hold office in this state, until such disability shall be removed by law, operates upon the capacity of the person to take office; and if the disqualification is removed subsequently to the election and prior to the assumption of the office, the person, though ineligible under said provision at the time of the election, will not be disqualified when taking the office.

2. SHERIFF—*Removal of Disability to take the Office.* One P., who had voluntarily borne arms against the government of the United States during the late rebellion, at the election on November 2, 1880, was ineligible under the constitution of the state to hold office. At such election, however, he was a candidate for the office of sheriff, and received a majority of the votes of the electors therefor. Afterward, and before he received his certificate of election, and before demanding possession of the office, his disability was removed by law. *Held,* That he was entitled to the office of sheriff, and to enter upon and discharge its duties after the removal of such disability.

### *Original Proceedings in Quo Warranto.*

ACTION brought in this court by *Fletcher P. Privett* against *Charles D. Bickford,* to try the title to the office of sheriff of Harper county. The opinion, filed July 26, 1881, contains a sufficient statement of the facts.

*Grove & Shepard,* for plaintiff.

*Davis & Jetmore,* for defendant.

The opinion of the court was delivered by

HORTON, C. J.: This is an original action in the nature of *quo warranto,* brought by plaintiff against defendant to try the title to the office of sheriff of the county of Harper, held and occupied by the defendant. An election was held on the 2d of November, 1880, for county officers. At such election plaintiff and one S. S. Singer were the opposing candidates; plaintiff received 607 votes for sheriff, and S. S. Singer 401 votes. The returns of such election were not canvassed, on account of the refusal of the board of canvassers, until May 16, 1881. The canvass was then made under a peremptory writ of mandamus issued out of this court, and by such canvass plaintiff was declared duly elected as sheriff. Thereafter a certificate of election was issued to plaintiff, and on the 18th of May, 1881, he duly qualified. On the next day he demanded of the defendant the possession of the office, and the records of the same, which defendant refused. The defendant alleges in his answer that on Tuesday succeeding the first Monday of November, 1878, he was elected sheriff of

Harper county for the unexpired term ending on the second
Monday of January, 1880, and duly qualified and took pos-
session of the office; that he has held possession of the office
since, and is now holding and discharging its duties; that
there was an omission to fill the office on the first Monday of
November, 1879, and therefore he says there was not any
vacancy in the office to be filled by an election on the second
Monday of November, 1880. He further alleges that the
plaintiff, at the time of the election, was ineligible to be
elected or hold the office of sheriff, because he had voluntarily
borne arms against the government of the United States, and
voluntarily aided and abetted in the attempted overthrow of
the government during the rebellion.

Upon the question of vacancy, this court recently decided,
in *Privett v. Stevens,* 25 Kas. 275, that on the second Monday
of November, 1880, there was a vacancy in the office of
sheriff in Harper county; that at such election it was lawful
to elect a sheriff to fill such vacancy; and therefore nothing
further need be said upon the first defense.

The preponderance of the evidence produced upon the trial
tends, we think, to support the claim of defendant, that the
plaintiff voluntarily bore arms against the government during
the late rebellion, but as the legislature of the state, during
its session of 1881, removed such disability (Laws of 1881,
ch. 106, p. 209), the question is presented whether a person
ineligible under the provisions of our constitution at the
election for the office of sheriff, is ineligible to hold the office,
provided the disability be removed or cured prior to his re-
ceiving his certificate of election and his demand for the pos-
session of the office. Upon this question the weight of
authority seems to be, and in our opinion is the better doc-
trine, that where the disability concerns the hold-
ing of the office, and is not merely a disqualification
to be elected to an office, a person who is ineligi-
ble at the election will be entitled to enter upon
and hold the office, if his disability be removed or cured be-
fore the issuance of the certificate, and before entering up-

1. Political dis-
ability — re-
moval of,
before taking
office.

on the discharge of the duties of the office for which he is elected. The provision of our constitution is, that "no person who has ever voluntarily borne arms against the government of the United States, or in any manner voluntarily aided or abetted in the attempted overthrow of said government, except all persons who have been honorably discharged from the military service of the United States since the first day of April, 1861, provided they have served one year or more therein, shall be qualified to vote or hold office in this state, until such disability shall be removed by a law passed by a vote of two-thirds of all the members of both branches of the legislature." (Amendment to the constitution, adopted Nov. 5, 1867.) This provision operates upon the capacity of the person to take office, rather than as a disqualification to be elected to an office. So the disqualification is to the holding of the office, and not to the election. There is a marked distinction between a person who is ineligible or incapable of being elected, and one who may hold the office. If a person may hold the office, he may be elected while he is under disqualification; and if he becomes qualified after the election and before the holding, it is sufficient. In the one case the disqualification strikes at the beginning of the matter — that is, it prohibits the election of an ineligible candidate; in the other case, the disqualification relates only to the holding of the office. The constitution expressly provides that the disability may be removed by a vote of two-thirds of all the members of both branches of the legislature. When the electors of Harper county voted for the plaintiff they had the right to look at and to build their expectations upon this provision, because, although at the election the plaintiff was ineligible to hold office, yet they knew that the legislature had the right to remove the disability, and if removed, he was entitled to the possession of the office to which he was preferred by the majority of the electors. If our constitution provided that the plaintiff was ineligible to be elected, instead of being ineligible to hold office, the contention of the defendant would be good; but as the ineligibility

is not as to the election, but only the holding of the office, such ineligibility is cured by the subsequent removal of the disqualification. In support of these views we refer to the following:

Section 2 of article 1 of the constitution of the United States ordains that: "No person shall be a representative [in congress] who shall not have attained to the age of twenty-five years, and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that state in which he shall be chosen."

Mr. John Y. Brown, of Kentucky, who was elected to the house of representatives of the thirty-sixth congress when he had not reached the age of twenty-five years, and was for that reason ineligible, did not take his seat at the first session; but being of the requisite age at the second session, he took his seat unchallenged, by force of the very votes cast for him when he was in fact ineligible.

Sec. 6 of the same constitution ordains that " . . . No person holding any office under the United States shall be a member of either house [in congress] during his continuance in office."

Mr. Robert C. Schenck was elected to the thirty-eighth congress in October, 1862, and on the following March was commissioned as a major general of volunteers, and entered upon the discharge of his duty, but resigned the office before the meeting of congress in December, 1863. This raised the question whether he could be admitted to a seat, and the answer was in the affirmative. The committee of elections, in its report on the subject, said:

"The inhibition attaches the moment the member enters upon the discharge of his duties as such, and nothing is gained by an earlier application of it."

Again, sec. 3 of the fourteenth amendment of the same constitution prescribes:

"No person shall be a senator or representative in congress, or elector of president or vice president, or hold any office, civil or military, under the United States, or under any

state, who, having previously taken an oath as a member of congress, or as an officer of the United States, or as a member of any state legislature, or as an executive or judicial officer of any state, to support the constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But congress may, by a vote of two-thirds of each house, removed such disability."

Under this provision of the amendment, Judge McCrary, in his work on the Law of Elections, says:

"It has been the constant practice of the congress of the United States since the rebellion to admit persons to seats in that body who were ineligible at the date of their election, but whose disabilities had been subsequently removed." (2d ed., p. 232, § 258.)

On the 8th of November, 1870, one Murray was elected clerk of the board of supervisors in the county of Waukesha, in Wisconsin, for the term of two years, to commence on the first Monday in January, 1871. At the time of such election Murray was an alien, and had not declared his intention to become a citizen of the United States. On the 14th day of November his disability was removed by appropriate proceedings in the circuit court for Milwaukee county, he then becoming a citizen of the United States. Thereafter he commenced an action to obtain possession of the office. The supreme court of Wisconsin held that he was entitled to the office to which he was elected, and decided that a person disqualified to take office at the time of the election would, in the absence of any statutory or constitutional provision to the contrary, be entitled to enter upon and discharge its duties, provided his disability be removed before the commencement of the term for which he is elected. (*State v. Murray*, 28 Wis. 96; *State v. Trump*, 50 Wis. 103; 1 Cushing's Law and Practice of Legislative Assemblies, 2d ed., §§ 78, 82 )

The conclusion reached by us also fits the intimation in *Wood v. Bartling*, 16 Kas. 109, that where a majority of the electors vote for an ineligible candidate, the election is not a nullity. In England, it has been held that where electors

have personal and direct knowledge of the ineligibility of the majority candidate, the votes cast for such candidate are void, and the minority candidate is elected. In this country, the great current of authorities sustains the doctrine that the ineligibility of the majority candidate does not elect the minority candidate, and this without reference to the question as to whether the voters knew of the ineligibility of the candidate for whom they voted. It is considered that in such a case the votes for the ineligible candidate are not void. Therefore the votes cast for the plaintiff were properly counted; and although ineligible to hold office when the votes were cast for him, his disability having been legally removed, he became legally qualified to accept the place which the will of the majority desired him to fill.

2. Sheriff—removal of disability to take the office.

Judgment will be entered in favor of the plaintiff for the possession of the office of sheriff, and all the costs in the case are hereby adjudged against the defendant.

All the Justices concurring.