No. 22,123.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Plaintiff*, v. ETTA M. COVELL, as City Clerk of the City of Topeka, *Defendant.*

SYLLABUS BY THE COURT.

QUALIFICATION OF ELECTORS—*Alien Enemies—Declaration of Intention to Become Citizens—Not Entitled to Vote.* Section 1 of article 5 of the state constitution, which defines the qualification of electors, and which provides that aliens possessing certain qualifications as to residence, who shall have declared their intention to become citizens conformably to the laws of the United States on the subject of naturalization, shall be deemed qualified electors, was not intended to and does not include or apply to alien enemies, and, therefore, citizens of nations now at war with our country, although they have previously declared their intention to become citizens, are not entitled to vote at the coming general election.

Original proceeding in mandamus. Judgment entered October 18, 1918. Opinion filed November 9, 1918. Judgment for plaintiff. Writ allowed.

*S. M. Brewster,* attorney-general, for the plaintiff.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an action brought by the state, on the relation of S. M. Brewster, as attorney-general, to compel Etta M. Covell, the city clerk of Topeka, to strike from the registration books of the city the names of citizens of Germany and Austria-Hungary who have been registered in Topeka as qualified electors, and who it is alleged will vote if their names are not stricken from the rolls of eligible voters.

The defendant admits that a number of persons who owe allegiance to the belligerent nations named, and who had declared their intentions to become citizens of the United States, had been registered as qualified voters, and she also stated that, although not satisfied as to the right of these parties to vote, the fact that they had declared their intentions to become naturalized citizens of the United States and had resided in the state six months and in the ward thirty days, led her to register them as electors, but that she desired to do her duty

under the law, and would willingly follow any decision the court might make.

The question presented for determination is : May citizens of nations at war with the United States, who have declared their intention to become naturalized citizens of this country, vote at the general election when state officers, United States senator, and members of the national house of representatives are to be chosen? The claim of this class of residents to register and vote is based on section 1 of article 5 of our state constitution, defining the qualifications of electors, which reads :

"Every [white] [male] person of twenty-one years and upwards belonging to either of the following classes—who shall have resided in Kansas six months next preceding any election, and in the township or ward in which he offers to vote at least thirty days next preceding such election—shall be deemed a qualified elector:

"1st.   Citizens of the United States.

"2d.   Persons of foreign birth who shall have declared their intention to become citizens conformably to the laws of the United States on the subject of naturalization."   (Gen. Stat. 1915, § 195.)

This provision, it will be observed, recognizes the supreme authority of the United States in the matter of naturalization. The transforming of an alien into a citizen of the United States can only be accomplished in accordance with the naturalization law enacted by the national congress. To secure uniformity in the law admitting aliens to citizenship and to avoid the conflict that might arise if the states had authority to prescribe the conditions of admission, it was provided in the federal constitution that congress should have the power to establish a uniform rule of naturalization. (U. S. Constitution, Art. 1, § 8.) The power so vested is exclusive in congress and cannot be exercised by any of the states, and no privilege that a state may confer by its constitution or statutes can convert a foreigner into an American citizen. (*Chirac v. Chirac,* 2 Wheat. [U. S.] 259; *Lanz v. Randall,* 4 Dill. [U. S.] 425). A constitutional provision of a state which invades the federal domain would be without effect. Naturalization is a national right and, while a state may confer certain rights and privileges upon an alien resident in the state, it can confer none which contravenes the national authority. When the people of Kansas adopted our constitution, and ordained that aliens

who had taken the first steps toward becoming citizens should be clothed with the rights of an elector, they were manifestly not conferring this right on enemies of the country—persons not eligible to naturalization. It was conferred upon citizens of the United States and aliens who have declared their intention to become citizens in conformity with the laws of the United States. A declaration of intention does not give an alien the status of a citizen. A foreigner who has done no more than to declare his intention to become a citizen, still owes allegiance to his foreign sovereignty, and still remains an alien. It has been decided that—

"A foreign-born resident of the United States, who has merely declared his intention to become a citizen, but has never complied with any other provisions of the naturalization laws, is none the less an alien, because of the facts that the constitution and the laws of the state wherein he resides have conferred its elective franchise and other privileges of citizenship on foreign subjects who have declared their intention to be naturalized, and that he has actually voted for members of Congress and state and county officers." (Webster's Law of Naturalization, 60.)

(See, also, *City of Minneapolis v. Reum*, 56 Fed. 576; *In re Moses*, 83 Fed. 995.)

It is said that the constitutional provision in express terms and without qualification confers the elective franchise on aliens. True, but there are aliens and aliens; those who have friendly relations with our people and government, and those who are subjects or citizens of a hostile nation, and the latter class must be regarded as having assumed the hostile attitude of the belligerent nations to which they owe allegiance. (*In re Naturalization of Subjects of Germany*, 242 Fed. 971.) Alien friends may become citizens of our country, but alien enemies cannot, and evidently the people who framed and adopted our constitution were speaking of that class of aliens who might complete naturalization and become citizens of this country, and not of those who could not under any circumstances be admitted to citizenship. Under the federal law an alien enemy cannot be admitted to citizenship. (U. S. Revised Stat. § 2171.) He has no political rights (1 Blackstone's Commentaries, 372), and both our courts and territory are closed against him. One owing allegiance to an adverse belligerent and who is actually hostile is subject to internment and to deportation. It is clear, therefore, that our

Rural High-school District v. Raub.

constitutional provision purporting to confer political rights on aliens does not apply to a class of aliens upon whom political rights cannot be conferred. It is too much to infer that the makers of our constitution intended to adopt a rule that conflicted with the federal constitution and law, or to enter into political relations with enemies of our country who are endeavoring to destroy our institutions. It certainly was not intended that people at war with us should have authority to select a congress which is empowered to declare war and provide for carrying it on, and also to help elect the president and other officers who direct the war, officers to whom the conduct of our national affairs and the integrity of the country are intrusted. The term alien as ordinarily used is applied to that class who have recognized rights in this country, and with whom friendly relations may be established. Blackstone, in his Commentaries, book 1, page 372, in speaking of the rights conferred upon aliens said:

"When I mention these rights of an alien, I must be understood of alien friends only, or such whose countries are in peace with ours, for alien enemies have no rights, no privileges, unless by the king's special favor, during the time of war."

We think the term was so used in our constitution, and therefore the citizens of Germany and Austria-Hungary, although they have declared their intentions to become citizens of this country, are not entitled to vote at the coming election. It follows that judgment must be rendered as prayed for in plaintiff's petition.