No. 24,935.

THE STATE OF KANSAS, ex rel. OMAR D. GREGORY, as County Attorney of the county of Osborne, *Appellant*, v. J. F. IREY, *Appellee*.

SYLLABUS BY THE COURT.

1. QUO WARRANTO—*An Alien is Not Competent to Hold the Office of Probate Judge.* In the absence of an express provision of the constitution or statutes on the subject, an alien is not competent to hold the office of probate judge.

2. SAME—*Office of Probate Judge—Incumbent Holding Over—Contestor Ineligible to Hold Office.* In a proceeding in quo warranto brought by the state to oust an officer holding over under a constitutional provision that he shall hold the office until his successor shall have qualified, the fact that the candidate who received the highest number of votes at the election at which his successor should have been chosen is an alien justifies a judgment for the defendant.

Appeal from Osborne district court; WILLIAM R. MITCHELL, judge. Opinion filed May 10, 1924. Affirmed.

*Charles B. Griffith*, attorney-general, and *Omar D. Gregory*, county attorney, for the appellant; *J. L. Travers*, of Osborne, of counsel.

*David G. Fink*, of Osborne, and *Fred S. Jackson*, of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: The state on the relation of the county attorney brings this action to oust J. F. Irey from the office of probate judge, alleging that E. B. Roadhouse is rightfully entitled to it. Irey

answered that Roadhouse is not a citizen of the state or of the United States and therefore cannot lawfully hold the office, and that the defendant is entitled to it until a legally competent person has been chosen or qualified. Judgment was rendered in favor of the defendant and the plaintiff appeals.

The material facts as found by the trial court are: Irey was elected probate judge in 1920. He qualified and has ever since occupied the office. In 1922 he was a candidate for reëlection but Roadhouse who was also a candidate received a majority of the votes. Roadhouse is a native of Canada, sixty-four years old. His parents were aliens and were not naturalized during his minority. On February 10, 1883, he filed a declaration of his intention to become a citizen of the United States but never completed his naturalization.

1. No constitutional or statutory provision expressly requires one to be a citizen in order to hold the office of probate judge. There is some difference of judicial opinion whether such requirement exists by implication with regard to public officers generally. (29 Cyc. 1377; 20 C. J. 68.) In deciding that a woman could hold the office of county superintendent of public instruction although not entitled to vote at the election this court distinguished the case from those treating alienage as a disqualification in the absence of any express law on the subject, saying: "It may well be, that the idea of an independent popular government implies that all its functions are to be exercised by citizens, and that it needs no express words to exclude aliens, because the inclinations, interests, and duties of the latter are presumptively with the nation of which they are citizens, and antagonistic everywhere else." (*Wright v. Noell,* 16 Kan. 601, 605.) The supreme court of Texas has said of the rule excluding from office persons unable to vote because not citizens: "If it be invoked to sustain a decision that none but the citizens of a state can hold offices under the state government, there is much to be said in its support." (*Steusoff v. The State,* 80 Tex. 428, 430. See, also, Throop on Public Officers, § 72, Mechem's Public Offices and Officers, § 74, and McCrary on Elections, § 346.) We accept the view that where the written law is silent an alien is legally incompetent to fill a public office. The Kansas constitution in its original form perhaps qualified this rule by giving aliens who had declared their intention of becoming citizens a different status through allowing them to vote. (Art. 5, § 1.) This privilege was withdrawn in 1918 by the amendment of the section cited, so as to restrict the right of suffrage

to citizens. This change in the policy of the state explicitly depriving aliens of the right to vote, by fair inference imposed upon them the disability to hold office if it had previously existed. During the time the earlier provision was in force enemy aliens who had declared their intention to become citizens were by interpretation denied the rights of suffrage, which the letter of the constitution appeared to give them. (*The State, ex rel., v. Covell,* 103 Kan. 754, 175 Pac. 989.) Under the present law, which does not in express terms either grant to an alien or withhold from him the capacity to hold public office, the implication against the existence of the right is almost equally clear.

Consuls, who are essentially commercial agents, are not even presumptively citizens of the nation employing them (*Bors v. Preston,* 111 U. S. 252), and it is said that commissioners appointed to take acknowledgment and perform similar duties in another jurisdiction are not required to be citizens of the state of their appointment, because of the exceptional character of their relation to it. (*In the matter of Mosness,* 39 Wis. 509.) All executive and judicial officers of the several states must be bound by oath to support the federal constitution (Art. 6, clause 3), a requirement which in ordinary situations presupposes citizenship, complete or inchoate, for it would be something of an anomaly for the citizen of a foreign country who has made no move to change his nationality to swear fidelity to the government of the United States. And for one owing allegiance to another nation to take part as an officer in administering the laws of a state is so anomalous that the intention to allow it should not be presumed in the absence of an affirmative declaration on the subject.

2. The plaintiff contends, however, that it is entitled to judgment because the question of Roadhouse's competency cannot be raised by the defendant in this action.

Where one who holds a certificate of election regular on its face and who has taken the oath of office and given a bond, where that is required, brings mandamus to compel the surrender of the office, with its furniture, books and appurtenances, its occupant is not ordinarily permitted in that proceeding to question the title of the holder of the certificate. (18 R. C. L. 263; Note, L. R. A. 1915 A 832; 31 L. R. A. 342, 349.) This is because the title to office can be directly adjudicated only in a proceeding in quo warranto or by

some statutory method. (*Hussey v. Hamilton,* 5 Kan. 462; 22 R. C. L. 681.) Mandamus lies merely for the immediate possession of the office; it is brought to determine which of two claimants shall administer its affairs pending an adjudication as to which claim is valid. The public interest is deemed best served by giving preference to him who holds the *prima facie* evidence of title. This rule is one of policy and not of jurisdiction, and an exception has been made where the plaintiff is alleged to be incompetent upon a ground involving turpitude. (*Hempstead v. Hospital Association,* 112 Kan. 241, 210 Pac. 492.) It is of especial weight where a certificate of election has been issued and is subject to attack only by proceedings involving a more or less extensive examination into disputed facts. Here, however, the question of fact has been judicially determined in favor of the defendant, and it is not even suggested that the decision in this respect is erroneous. As was said in a case where the action to be taken lay within the discretion of the court, it would be idle to clothe a claimant with an office from which he would be at once subject to removal. (*Weston v. Lane,* 40 Kan. 479, 482, 20 Pac. 260.)

The rule awarding possession to the holder of the certificate of election does not apply here because this proceeding is quo warranto —one in which the title to the office is the very matter to be determined, and in this instance has been determined. The state constitution provides that "All judicial officers shall hold their offices until their successors shall have qualified." (Art. 4, § 12.) The verb "qualify" in this connection ordinarily has reference to taking of an oath and giving a bond, but it presupposes a valid selection of the person performing these acts and his competence to hold the office. No other claimant would be a "successor" within the meaning of the provision quoted. If no election had been held in 1922 and a right to the office should be asserted by some one appointed by the board of county commissioners, or any one else having no authority in that connection, and he were to take the oath and give the bond, the defendant's right to continue holding the office would obviously not be affected. "It seems to be well settled that the indefinite portion of time indicated by the phrase 'until their successors shall be qualified' is as much a part of the term of office as the time during which the officer is entitled absolutely to hold. In the one case he is entitled to hold as against every one, and in the other as against every one except such as should come with legimate credentials." (*Pruitt*

*v. Squires,* 64 Kan. 855, 858, 68 Pac. 643.) "The person holding any civil office under the state is entitled by the constitution to continue to exercise the duties of the office until his successor is duly qualified. There can be no doubt but that the 'successor' is one legally chosen or elected." (*Ballantyne v. Bower,* 17 Wyo. 356, 366.) The tenure of the incumbent lasts until some one else has acquired a legal right to hold the office. In a similar situation to that here presented the scope of the decision is indicated by this paragraph of the syllabus:

"The incumbent of an office, the term of which is for a specified period, 'and until his successor is elected and qualified,' is entitled to retain the office after the lapse of the specified period, in the event of the election of another person to succeed him, who is ineligible; hence, he has such an interest in such election that he may invoke a decision as to its legality." (*Taylor v. Sullivan,* 45 Minn. 309. See, also, *Hogan v. Hamilton County,* 132 Tenn. 554.)

Irey is the present probate judge and is entitled to continue his services in that capacity unless Roadhouse has a 'legal claim to it, and that is not the case if the law makes him incompetent to hold it. The plaintiff suggests that inasmuch as Roadhouse is not a party no judgment binding upon him can be rendered in this proceeding. That is doubtless true, but his claim to the office having been put in issue by the allegations of the petition, made necessary by the statute (R. S. 60-1603), that he is rightfully entitled to it, may be finally adjudged invalid for the purposes of the case.

The defendant is not claiming and could not effectively claim any right to the office by virtue of the votes cast for him at the election. The fact that the candidate receiving the majority of the votes being disqualified does not result in the election of the runner-up. (*Wood v. Bartling, Mayor,* 16 Kan. 109, 114.) In such case the election is said to be a nullity (20 C. J. 207·), although if the disqualification goes only to the holding of the office and is removed before the time of acceptance the canvass in favor of the majority candidate stands. (*Privett v. Bickford,* 26 Kan. 52.) That is the effect given to the word "ineligible" in this state, although the contrary view is more common. (29 Cyc. 1376.) The proceedings for naturalization begun by Roadhouse have spent their force by his failure to follow them up within seven years (34 U. S. Stat., p. 603) or he might by completing them have qualified himself to hold the office.

The ineligibility of the candidate having the certificate of election is one of the grounds upon which an election may be contested. (R. S. 25-1411.) The failure to institute a contest under the statute

cited does not, however, preclude the opposing candidate from seeking the office by quo warranto. (*Tarbox v. Sughrue*, 36 Kan. 225, 12 Pac. 935.) That however is not important here because the defendant is not claiming any right under the election.

The judgment is affirmed.