No. 36,758

WILLIAM P. COATES, *Appellant,* v. ED J. CAMP, DALE GEAR, RALPH ULM, as County Commissioners of Shawnee County, HAL RAGER, as County Clerk of Shawnee County, The County Commissioners as the Canvassing Board of Shawnee County, and ELBURN M. BEAL, *Appellees.*

(173 P. 2d 266)

Opinion filed September 27, 1946.

*Edward Rooney,* of Topeka, argued the cause, and *Richard R. Funk, Jacob Dickinson, Peter Caldwell* and *David Prager,* all of Topeka, were on the briefs for the appellant.

*Barton E. Griffith,* of Topeka, argued the cause for appellee Elburn M. Beal; *Allen Meyers,* of Topeka, was on the briefs for appellees County Commissioners and County Clerk.

The opinion of the court was delivered by

HOCH, J.: The principal questions here presented are: First, is the appellee, Elburn M. Beal, who was a candidate for the Republican nomination for sheriff of Shawnee county at the recent August primary, eligible to hold the office during the regular term beginning in January, 1947, and entitled to have his name printed upon the ballot as such nominee; second, if Beal is not so eligible and so entitled, is Coates, the appellant, entitled to be certified as the Republican nominee for such term as sheriff. Procedural questions are whether Coates is entitled to bring the action, and whether the substantive issues above stated may properly be determined in this proceeding.

Beal was duly appointed sheriff by the governor to fill the unexpired term of sheriff William Frey who had been inducted into the military service of the United States. He took office on October 23, 1943, and continued to hold the office during the remainder of 1943 and most of 1944, and at the election in November, 1944, was elected for the regular two-year term beginning on January 8, 1945. On December 4, 1944, he resigned, and Gerald Kreipe, the undersheriff, was appointed sheriff and Kreipe immediately appointed Beal as undersheriff. As undersheriff, Beal continued to occupy the sheriff's living quarters, and on January 8, 1945, again assumed the office of sheriff for the term for which he had been elected and at once named Kreipe as undersheriff.

At the primary election in August, 1946, Beal and Coates were candidates for the Republican nomination for the regular term beginning in January, 1947.

Upon canvass of the votes it was announced by the county commissioners acting in their capacity as canvassing board—hereinafter referred to as the board—that Beal had received the most votes and would be certified as the Republican nominee. Whereupon

action was brought in the district court by Coates, the "runner-up," to enjoin the issuance of a certificate of nomination to Beal and to require the board to issue such certificate to him. Beal and the county clerk, Hal Rager, were also named as defendants. The ground upon which the petition was based was that Beal is ineligible under the constitution of the state to hold the office for the term beginning in January, 1947; that being so ineligible, his nomination is invalid and void, that the votes cast for him are not entitled to be counted, and that because of such invalidity, Coates is entitled to the certificate of nomination. The provision of the constitution relied upon by Coates is article 4, section 2, which provides:

". . . No person shall hold the office of sheriff . . . for more than two consecutive terms."

Restraining order was issued and the matter set down for hearing.

The board and the county clerk filed an answer in which they averred that the only duty they had to perform in the matter is a ministerial one; that the only function of the board was to canvass the votes and determine which one of the candidates received the highest number of votes, and to make an abstract of the votes cast for the various candidates, and that it is the statutory duty of the clerk to make out a certificate of nomination for each person receiving the most votes for the respective offices, and to deliver such certificate to each successful candidate upon his making application therefor. The board and the clerk further averred that they had no interest or responsibility in determining the eligibility of Beal to be a candidate and that their duties in the matter are entirely ministerial, and they prayed that the court advise and instruct them in the matter.

Defendant Beal filed a demurrer to the petition on the principal grounds that the plaintiff had no legal capacity to bring the action, that the court was without jurisdiction of the defendants, and that the petition did not state a cause of action. Beal also filed a motion to dismiss the action and to dissolve the restraining orders, on the grounds that the board had no jurisdiction except to determine what candidate received the greatest number of votes; that it had determined that Beal had received the most votes, and that the board could not be enjoined from performing its purely ministerial duties; that the board had completed its statutory duties, and could not be required to reconvene or to announce any determination other than the one already made; that the county clerk had no duty in

the matter except to accept the determination of the board, to attest the same when reduced to writing and signed by the board, and to place the name of Beal on the general election ballot; that injunctive relief is not a proper remedy; that the plaintiff has plain and adequate remedies at law, and that in any event the plaintiff would not be entitled as "runner-up" to be certified as the Republican nominee.

The trial court sustained the demurrer and the motion of Beal on the ground that "the petition of the plaintiff does not state facts sufficient to constitute a cause of action, in that the court does not have jurisdiction or equitable power to enjoin the defendants . . . from performing the ministerial duties placed upon them by law." This appeal followed.

The case is immediately before us upon motion of appellees to dismiss the appeal for the reasons that "the law on the only question involved on the appeal is so settled . . . that any further review thereof is unnecessary"; that the appeal is "frivolous and for delay and is wholly without merit"; that "in any event" review "would be ineffectual."

The case has received immediate consideration by the court in view of the public interest involved and the need for early decision.

We first consider the procedural questions. The appeal is not to be dismissed on the ground that appellant Coates was without capacity to bring the action. As a "runner-up" for the nomination, he certainly has a special and peculiar interest in determination of the question of whether Beal is ineligible and whether he, Coates, is entitled to be certified as the nominee in case Beal be held ineligible. Whether a plaintiff has such a special and peculiar interest in a controversy as to entitle him to bring action is a matter to be determined in the light of the nature of the controversy and of all attendant facts and circumstances. In *Young v. Regents of State University*, 87 Kan. 239, 124 Pac. 150, we said upon this point:

"There are no rules for the accurate determination of such questions, and their solution depends upon a fair and candid exercise of the faculty of discrimination. In some cases the private interest is patent. . . . In other cases, the independent private interest is not so readily distinguishable, but is sufficiently clear to entitle it to recognition. In the case of *Simpson v. Osborn*, 52 Kan. 328, 34 Pac. 747, twenty-five petitioners nominated a candidate for a public office. It was held that one of them possessed such a peculiar and special interest in having the name of the nominee appear on the official ballot that he could maintain an action of mandamus to require the secretary of state to certify the nomination to the various county clerks. . . ." (p. 244.)

We do not question the soundness of the rule which denies the right to bring an action to one who clearly has no special or peculiar interest in the controversy. But where there is substantial basis for asserting a special and peculiar interest, this court has consistently been indisposed to deny a right to bring an action, and especially so where important public interests are put in issue which would be jeopardized by dismissal of the action. In the recent case of *Moore v. Smith,* 160 Kan. 167, 160 P. 2d 675, wherein the plaintiff Moore, who was serving as sheriff under appointment by the Governor, sought to enjoin the county commissioners from certifying the election of Smith for the "short term"—the period between the election and the beginning of the next regular term—on the ground that no such "short term" existed under the law, the contention was made, as here, that the plaintiff was without capacity to bring the action. Recognizing a special interest on the part of the plaintiff, we entertained the action and decided it upon its merits. Nor is the following of such a course in this case inconsistent with what was said in *Moore v. Wesley,* 125 Kan. 22, 25, 262 Pac. 1035, syllabus 3 of which reads:

"Rule followed that a private litigant having *no valid claim* to a public office in his own behalf cannot maintain quo warranto to question the title to that office vested in another incumbent." (Italics supplied.)

Perhaps a distinction might be drawn between that case and the instant one on the ground that the Moore case was a proceeding in quo warranto to *test* the *right* of an incumbent *to an office into which he had been regularly inducted* and the instant one which seeks only to *test* the *right* of the defendant *to be certified as a party candidate* for an office. In any event, it would lead to an anomalous and quite absurd result to say that in no case could one claiming to have been nominated at a primary be permitted to bring an action unless he has shown that he has a *"valid claim"* to the nomination. The *validity* of the claim would often—as here —be one of the very matters at issue. Furthermore, the court was of the opinion in the Wesley case that no reasonable basis existed for asserting title to the office. In the instant case we cannot fairly say that there is no reasonable basis for divergence of view on the law question involved. In addition to all this, we have here, in the pleadings, a prayer by the board and the county clerk to be advised as to their duty in this, a matter in which the public has a real concern. While this is not technically an election contest as was

the recent case of *Johnson v. Russell,* 161 Kan. 203, 166 P. 2d 568, what was there said as to the public interest is equally applicable here. In line with a traditional attitude of this court and with authorities cited in the opinion, we said:

"An election contest is not merely a proceeding for the adjudication and settlement of the private rights of rival claimants to an office. Whatever the form of the proceeding may be, an election contest is in its essence a proceeding in which the public is vitally and primarily concerned." (Syl. ¶ 1.)

We next take note of appellee's contention that this is solely an injunction proceeding and that injunction will not lie because there is a statutory remedy provided which has not been followed. Special attention is called by appellee to the provisions of section 25-308, G. S. 1935, material portions of which are as follow:

"The certificate of nomination and nomination papers being so filed, and being in apparent conformity with this act, shall be deemed to be valid, unless objection thereto is duly made in writing within three days from the date said papers are filed with the proper officers. . . . Such objections or questions arising in the case of nominations for officers to be elected by the voters of a county or township shall be considered by the county clerk, clerk of the district court and county attorney; and the decision of a majority of said officers shall be final. . . . All mandamus proceedings to compel an officer to certify and place upon the ballot any name or names, and all injunction proceedings asking that said officers be restrained from certifying and placing upon the ballot any name or names, must be commenced not less than twenty days before the election."

Appellee urges that before a proceeding in mandamus or injunction will lie, the aggrieved party must first file his objections with and have a determination of the question by the contest board provided for in the statute. It would unduly extend this opinion to trace the legislative history of section 25-308. It is conceded that on its face its provisions are somewhat difficult to harmonize. If the decision of the board is "final" as stated in the statute, then what is the function of mandamus or injunction thereafter? On the other hand, it is argued, if mandamus or injunction constitute a concurrent remedy which may be resorted to without first invoking action by the contest board, what was the legislative purpose in providing for a contest board? The question is not free from difficulty. It has not been extensively briefed, and inasmuch as other pertinent statutory provisions permit the action to be entertained, this specific question of construction of the statute need not be determined here. We merely say, on the question, that we do not find *State, ex rel., v. Penner,* 124 Kan. 285, 259 Pac. 785, to

be controlling in support of the construction of 25-308 as urged by appellee. In that case, the state brought an original proceeding in quo warranto to challenge the right of a township trustee to hold the office on the ground that he had not been regularly nominated at the primary. When the action was brought, he had been duly inducted into office and was discharging its duties. The attack made in the quo warranto proceeding involved no question of the eligibility of the incumbent, either constitutional or statutory, to hold the office, but went merely to a question of regularity of nomination. Nor was any question as to his election raised. The court reasonably said that under those circumstances the right of the incumbent to continue to hold the office could not then be assailed. Certainly it cannot be said that if in that case the state had shown that the incumbent was ineligible under the constitution to hold the office, the court would have permitted him to continue to hold it.

The case is being entertained and will be determined upon its merits.

Appellee contends that it is not the function of this court to control or supervise the actions of the canvassing board in the performance of purely ministerial duties. We agree. The contention is supported by many decisions. It will suffice here merely to cite some of them. (*Continental Pipe Line Co. v. Cartwright,* 154 Kan. 430, 118 P. 2d 1052; *Burke v. State Board of Canvassers,* 152 Kan. 826, 107 P. 2d 773, 132 A. L. R. 356; *Sharpless v. Buckles,* 65 Kan. 838, 70 Pac. 886; *Shull v. Comm'rs of Gray Co.,* 54 Kan. 101, 37 Pac. 994; *Brown v. Jeffries,* 42 Kan. 605, 22 Pac. 578; *Rosenthal v. State Board of Canvassers,* 50 Kan. 129, 32 Pac. 129, 19 L. R. A. 157; *Brown v. Comm'rs of Rush Co.,* 38 Kan. 436, 17 Pac. 304; *Privett v. Stevens,* 25 Kan. 275; *Lewis v. Comm'rs of Marshall Co.,* 16 Kan. 102, 22 Am. Rep. 275.)

Under the statute (G. S. 1935, 25-701), it is the duty of the county commissioners, acting as a canvassing board, to "determine the persons who have received the greatest number of votes in the county for the several county, district and state offices" and "such determination shall be reduced to writing and signed by the commissioners and attested by the clerk, and shall be annexed to the abstract of votes given for such officers, respectively." This and other provisions of the general election laws are made applicable to the primary by the provisions of 25-214, G. S. 1935.

This determination was duly made and announced in the instant

case. It appears that only one of the three members of the board had signed the formal certification of Beal's nomination when the restraining order was issued. That fact is here immaterial. The result had been announced by the board and no question as to the vote is here raised. In *Capper v. Stotler*, 88 Kan. 387, 398, 128 Pac. 200, we said: "The essential act of the board was the declaration of the result." We have examined other cases cited on this point and find none of them inconsistent with the view that the act of the board in canvassing the returns and returning the result is a purely ministerial duty and the trial court was right in refusing to enjoin them. Furthermore, we have specifically held that the question of eligibility of a candidate is not for a canvassing board to determine (*Privett v. Stevens, supra*).

As noted above, it is the duty of the clerk to attest the determination of the result by the board (25-701), and it is his duty to make out abstracts of the votes for the various offices and those "abstracts being certified to and signed by the county clerk or his regularly appointed deputy shall be deposited in his office as a permanent record" (25-704), and to furnish certificates of election (nomination) to those having received the highest number of votes (25-705). These are ministerial duties not to be enjoined. But there is another provision of the statute which must be considered. Section 25-307 reads as follows:

"In case a candidate who has been duly nominated under the provisions of this act dies before election day, or declines the nomination as in this act provided, or should any certificate of nomination be held *insufficient or inoperative* by the officers with whom they may be filed, the vacancy or vacancies thus occasioned may be filled by the political party or the persons making the original nominations; or, if the time is insufficient therefor, then the vacancy may be filled, if the nomination was by convention, primary, or caucus, in such manner as the convention, primary or caucus had previously provided; or in case of no such provisions, then by the regularly elected or appointed executive or central committee representing the political party or persons holding such convention, primary meeting, or caucus. The certificates of nominations made to supply such vacancy shall state, in addition to the facts hereinbefore required by this act, the name of the original nominee, the date of his death or declination of the nomination, or the fact that the former nomination had been held *insufficient or inoperative,* and the measures taken in accordance with the above requirements for filling a vacancy; and it shall be signed and sworn to by the presiding officer and the secretary of the convention, primary or caucus, or by the chairman and secretary of the duly authorized committee, as the case may be." (Italics supplied.) (See, also, G. S. 1935, 25-220.)

What is the meaning of the provision "should any certificate of nomination be held *insufficient* or *inoperative*" and particularly, what is the meaning of the word "inoperative"? We do not find that the word "inoperative" has had judicial construction, and we need not here determine all that the word was intended to include, or all that may be excluded from its meaning. But we have no hesitancy in saying that the word is applicable to the case before us. On the face of the record before us, Beal has been nominated for the office of sheriff. The clerk, who is charged with the duty of preparing the ballots for printing (G. S. 1935, 25-604), seeks the advice of the court as to his proper course in the matter, in view of the admitted facts in the case. If Beal is ineligible to hold the office for the term in question, shall we say that nonetheless the clerk should proceed to place his name upon the ballot, with all the needless expense and futile voting by the electors which that action would at least make possible? We do not think the statutes require such an abortive thing or such disregard of the public interest in the matter. The word "inoperative" must be given a meaning, and certainly it must at least include the case of the nomination of a candidate who would be ineligible under the constitution to hold the office if elected. Furthermore, the question at once arises whether the declaratory judgment act (G. S. 1935, 60-3127 *et seq.*) might not also be invoked since an important controversy exists and our advice on the question has been sought in the answer of defendants. Strong reasons for holding the act here applicable exist under the facts and pleadings, and these reasons are buttressed by the rule that courts have a special duty to take jurisdiction of questions of a constitutional character (12 C. J. 699). The declaratory judgment act declares "its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights," and that "it is to be liberally interpreted and administered, with a view to making the courts more serviceable to the people." (60-3132.) We have repeatedly said that the act may not be invoked where no actual controversy exists and that it is not to be used merely as a substitute for ordinary actions or pending actions where the issues are being litigated. We adhere to that position. But in the instant case there is at least an actual controversy—one that clearly involves the public interest—and the officials pray for determination of their duty in the matter, under the law. (See *Railroad Bldg., Loan & Savings Ass'n v. Grayum*, 136 Kan. 418,

15 P. 2d 405; and discussion in *Hudson v. Travelers Ins. Co.*, 145 Kan. 732, 736-739, 67 P. 2d 593.) In support of his view that the declaratory judgment act may not be invoked in this case, appellee stresses what was said in *Pugh v. City of Topeka*, 151 Kan. 327, 99 P. 2d 862, in which it was held that the act could not be invoked. In that case, about a month after a new trial had been granted and appeal taken to this court, the plaintiffs sought to by-pass the appeal by filing in the same action a petition for a declaratory judgment on the very points of law involved in the case. No such situation exists here. Moreover, even in that case we only said that such procedure was not contemplated by the act "in the absence of unusual circumstances or emergency features." (Syl. ¶ 3.) However, determination of the question is not required here, and we pass it without further discussion.

We come to the substantive issues. First, is appellee ineligible to hold the office of sheriff for the two-year term beginning next January? As heretofore noted, he served as sheriff during a large part of the term ending in January, 1945, and is now serving the two-year term which ends in January, 1947. Would service during the term beginning in January, 1947, constitute a holding of the office for more than two consecutive terms and therefore be in contravention of article 4, section 2 of the constitution?

It would unduly extend this opinion to state in detail all the facts involved in the decided cases, but they hold, in substance, that the holding of the office during any part of each of three consecutive terms constitutes a holding of the office for more than two consecutive terms. In *Davis v. Patten*, 41 Kan. 480, 483, 21 Pac. 677, a county treasurer—who is under the same constitutional prohibition as a sheriff—had served part of a two-year term, all of another term, and attempted to hold the office during the next term. Although he had not held office for the two full terms, his right to enter upon the succeeding term was denied. In the opinion the court quoted from the opinion in *Horton v. Watson*, 23 Kan. 229, wherein it was said: " 'The constitution of course does not mean that the county treasurer may hold the office *for four years.* . . . The constitution says *two terms, not four years*'." It is true that in the Horton case, *supra*, Watson was held eligible although his service was within three different terms. But the legislature had changed the time of the beginning of the term and there was a period of over three months between the expiration of the term in

which he first served and the beginning of the second term during which he served. These three months belonged to neither the preceding nor the succeeding term, and during that period another person held the office under appointment. Hence the three terms during or within which Watson served were not "consecutive."

In *Adkinson v. Noonan,* 110 Kan. 335, 203 Pac. 694, Noonan had held two terms. A successor was elected but died about a month before the day when his term would begin. Noonan contended that he could "hold over" until a successor was "elected and qualified." His contention that a period of "holding over" would be part of his second term was rejected and it was held that a vacancy existed at the statutory end of the second term, to be filled by appointment. The court thus again gave a strict interpretation to the constitutional provision.

In *Davis v. Patten,* supra, it was not only held that Patten was ineligible to hold the office but "was not eligible to be elected" (p. 484).

In *Hanson v. Cornell,* 136 Kan. 172, 12 P. 2d 802, it was held that one who was disqualified under the statute to *hold* the office of district judge was not eligible to be elected to the office (p. 175).

Appellee bases his contention of eligibility upon two grounds: First, that the service which he rendered from October 23, 1943, to January, 1945, was service rendered under the provisions of a special statute (G. S. 1945 Supp. 73-213 *et, seq.*) and was not part of a "term" within the meaning of the constitution; second, that when he resigned on December 4, 1944, and Kreipe was appointed and served until January, 1945, there was created thereby a break in his service, with the result that it cannot be said that the term beginning in January, 1947, would constitute a third *consecutive* term.

We will first consider the second contention. We have found no case precisely in point on the facts. But as already noted, the word "term" in the constitutional prohibition has been construed to include service of *part* of a two-year term. And it is clear that the adoption of appellee's theory would open wide the door to evasion of the constitutional prohibition. A sheriff could make himself eligible to hold office indefinitely by the simple expedient of resigning a month, a week, or even a day, before the end of every second two-year term. A construction which would make that result possible cannot be adopted. Appellee's motive in resigning about a month before the expiration of the term and continuing for that period as

undersheriff may have been merely an attempt to fortify an eligibility to reëlection which he honestly believed already existed. But the fact that he did resign and continued as deputy sheriff for the very short time remaining in the term serves to illustrate the danger of opening such an avenue for evasion. (For recent comment and citation of cases, pertinent here, see *Limpp v. Dodge,* 146 Kan. 948, 952-955, 73 P. 2d 1001.)

Appellee's next contention is that prior to January, 1945, he was not in fact sheriff, but that he was merely acting as a sort of agent for Frey who had gone into the military service. He relies strongly upon chapter 355 of the Laws of 1941 (G. S. 1945 Supp. 73-213 to 73-219). This chapter was enacted primarily in the interest of public officers who might be called into military service. It is unnecessary to set out the statute in full. It provides (73-214) that the absence of such officer "shall not create a forfeiture of, or vacancy in the office . . . but shall be construed to merely create a temporary vacancy." The evident purpose was to provide that an officer who went into military service might at once reassume the office upon discharge. Section 73-215 provides that this "temporary vacancy" shall be filled by appointment and that "all such appointees *shall hold the office* or position which they are temporarily to fill during the temporary vacancy caused by the absence of the officer in the military service." (Italics supplied.) It will be noted that the statute uses the identical words *"hold the office"* which are in the constitutional provision here examined. It is not denied that appellee was appointed as sheriff, that he discharged all the statutory duties of a sheriff and that on December 4th he resigned "as sheriff." We cannot adopt the theory that while he was serving under appointment, he was not in fact holding the office of sheriff.

It follows that appellee Beal is ineligible to hold the office of sheriff during the term beginning in January, 1947, and that while upon the record here it appears that he was "nominated," such nomination is inoperative and he is not entitled to have his name placed upon the general election ballot.

The final question is whether appellant Coates is entitled to be certified as the Republican nominee. He urges that since Beal, if elected, would be ineligible to serve, the votes cast for him should not be counted, with the result that the nomination would go to him, the appellant. This question has long been settled in Kansas against appellant's contention. It is true that there is some conflict in Ameri-

can decisions, some of them following the so-called "English rule" which is said to give the election to the "runner-up" if it may be said that the voters had knowledge of the disqualification of the candidate. Assuming — and assuming only — that votes for Beal would be discarded entirely, under the hazy English doctrine—difficult at best of practical application—the majority view in this country is contrary to the "English rule," and the decisions of this court are flatly against it. A rather full annotation on this question appears in 133 A. L. R. 319 *et seq.* It is there said:

"The general rule—that votes cast for a deceased, disqualified, or ineligible person are not to be treated as void or thrown away, but are to be counted in determining the result of the election as regards the other candidates—has been most frequently applied to cases where the highest number of votes were cast for the deceased or disqualified person. The result of its application in such cases is to render the election nugatory, and to prevent the election of the person receiving the next highest number of votes." (p. 321.)

The general rule arises, primarily, from the obvious fact that a nomination or election is to go only to the candidate for whom the most voters expressed a preference. And no majority or plurality preference can be claimed by a candidate who did not receive as many votes as some other candidate. The statute only gives the nomination to "the person receiving the greatest number of votes" (G. S. 1935, 25-219). In this connection, it may be noted that the constitution does not declare that votes shall not be cast for an ineligible candidate—it merely prohibits *"the holding"* of the office for more than two consecutive terms. The fact that votes for Beal prove to be votes for a person ineligible to hold the office does not keep them from being votes.

In the early case of *Wood v. Bartling,* 16 Kan. 109, it was said:

"It has several times been held, where a majority of the electors vote for an ineligible candidate, that the election is a nullity, although eligible candidates may also have been voted for. (*Saunders v. Haynes,* 13 Cal. 145; *State v. Giles,* 1 Chandler, 112; *State v. Smith,* 14 Wis. 497; *Commonwealth v. Cluley,* 56 Penn. St. 270; *People v. Clute,* 50 N. Y. 451; *State v. Swearingen,* 12 Geo. 23; *State v. Gastinel,* 20 La. An. 114; Opinion of Judges, 38 Me. 597, *et seq.*) The person receiving the highest number of votes in such a case is not elected because of his ineligibility; and no other candidate can be considered as elected, because a majority of the electors have expressed their will and determination that he should not be elected." (p. 114.)

In *Hudson v. Conklin,* 77 Kan. 764, 93 Pac. 585, the syllabus reads:

". . . the fact that an incumbent of an office to which he had been elected was ineligible conferred no claim to the office on a minority candidate." (¶ 1.)

Again, from the opinion in *State, ex rel., v. Irey*, 116 Kan. 21, 225 Pac. 1050:

"The fact that the candidate receiving the majority of the votes being disqualified does not result in the election of the runner-up. (*Wood v. Bartling*, 16 Kan. 109, 114.) In such case the election is said to be a nullity. (20 C. J. 207.)" (p. 25.)

See, also, *Jansky v. Baldwin*, 120 Kan. 332, 243 Pac. 302, 47 A. L. R. 476.

It follows that neither the appellant Coates nor the appellee Beal is entitled, by virtue of the primary election result, to have his name printed upon the general election ballot as the Republican nominee for sheriff, but that a vacancy now exists as to such party nomination which may be filled in the manner provided in the statute.

The motion to dismiss the appeal is denied.

The order dissolving the restraining order is sustained as to the canvassing board and also as to the county clerk insofar as the restraining order relates to his performance of purely clerical or ministerial duties.

The order dismissing the action is overruled.

The county clerk is advised that the certificate of nomination of Elburn M. Beal as Republican nominee for sheriff is inoperative, and direction is here given that the name of said Beal should not be printed on the general election ballot as such nominee, and that only the name of such person, if any, regularly named in the manner provided by law to fill the vacancy in such nomination, should be printed thereon as such nominee.